# ORIGINAL

1  Kristin L. Martin (SBN 206528)
2  DAVIS, COWELL & BOWE, LLP
   595 Market Street, Suite 1400
3  San Francisco, CA 94105
   Telephone: 415-597-7200
4  Fax:        415-597-7201
5
6  Attorneys for Petitioner,
   UNITE HERE International Union
7

FILED

07 DEC 11  AM 9: 54

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

8              IN THE UNITED STATES DISTRICT COURT
9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  UNITE HERE International Union, | **CASE No.**  '07 CV 2312 W AJB |
| 12                    Petitioner, | |
| 13        vs. | **PETITION TO CONFIRM ARBITRATION AWARD** |
| 14 | |
| 15  PALA BAND OF MISSION INDIANS, | **[9 U.S.C. § 9]** |
| 16                    Respondent. | |
| 17 | |

18
19
20
21
22
23
24
25
26
27
28

PETITION TO CONFIRM ARBITRATION AWARD

1.  This is a suit to confirm an arbitration award issued pursuant to an arbitration agreement contained in a Tribal-State Gaming Compact entered into pursuant to the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*

## JURISICTION AND VENUE

2.  This Court has jurisdiction pursuant to 25 U.S.C. § 1331 because the Tribal-State Gaming Compact is a creation of federal law. *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997).

3.  Venue lies in the Southern District of California pursuant to 28 U.S.C. § 1391(b) and 9 U.S.C. § 9 because the arbitration proceedings involved herein were held and the award was made in San Diego County.

## PARTIES

4.  Petitioner UNITE HERE! International Union ("the Union") is a labor organization with an office in San Diego County.

5.  Defendant Pala Band of Mission Indians ("the Pala Tribe") is an Indian tribe whose reservation is located in San Diego County.  The Tribe owns and operates a casino, known as the Pala Casino Spa and Resort ("the Pala Casino"), which is also located in San Diego County.

## STATEMENT OF CLAIM

6.  In 1999, the Pala Tribe entered into a Tribal-State Gaming Compact with the State of California ("the Gaming Compact") pursuant to the Indian Gaming Regulatory Act.  Section 10.7 of the Gaming Compact requires the Tribe to "provide[] an agreement or other procedure acceptable to the State for addressing organizational and representational rights of Class III Gaming Employees and other employees associated with the Tribe's Class III gaming enterprise, such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees at the Gaming Facility of any related facility, the only significant purpose of which is to facilitate patronage at the Gaming Facility."  Addendum "B" to the Gaming Compact provides that the Pala Tribe "agrees to adopt an ordinance identical to the Model Tribal Labor Relations Ordinance attached hereto."  True and correct copies of the Preamble,

Section 10.7, Addendum "B", the Model Tribal Labor Relations Ordinance, and signature

page of the Gaming Compact are attached hereto as Exhibit A.

    7.  On September 22, 1999, the Pala Tribe adopted the Model Tribal Labor Relations

Ordinance ("TLRO") as required by Section 10.7 of the Gaming Compact.  Attached hereto as

Exhibit B is a true and correct copy of a letter from the Pala Tribe's Chairman Robert H. Smith

to Governor Gray Davis stating that "the Pala Band of Mission Indians adopted the Tribal

Labor Relations Ordinance pursuant to Section 10.7 of the Tribal-State Gaming Compact on

September 22, 1999."

    8.  The Gaming Compact was approved by the United States Department of the Interior

on May 5, 2000.  Attached hereto as Exhibit C is a true and correct copy of a statement

approving the Gaming Compact signed by Kevin Glover, Assistant Secretary – Indian Affairs

of the United States Department of the Interior.

    9.  The TLRO is a valid provision of the Gaming Compact.  *In re Indian Gaming

Related Cases*, 331 F.3d 1094, 1115-17 (9th Cir. 2003).

    10.  Section 13 of the TLRO provides a binding dispute resolution procedure that

includes arbitration of disputes that arise under the TLRO.  Specifically, Section 13(c)

provides, in relevant part:

> The second level of binding dispute resolution shall be a resolution by the Tribal
> Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the
> parties which panel shall serve all tribes that have adopted this ordinance.  The
> Tribal Labor Panel shall have authority to hire staff and take other actions
> necessary to conduct elections, determine units, determine the scope of
> negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all
> other activities needed to fulfill its obligations under this Tribal Labor Relations
> Ordinance.
>
> * * *
>
> (2)  Unless either party objects, one arbitrator from the Tribal Labor Panel will
> render a binding decision on the dispute under the Ordinance.

///

11. A Tribal Labor Panel was established pursuant to the TLRO. Since at least October 2006, Arbitrator Sara Adler has been a member of the Tribal Labor Panel. On or about October 9, 2006, the Union and the Pala Tribe selected Arbitrator Adler to arbitrate a dispute that had arisen under the TLRO.

12. On or about March 16, 2007, the Union and the Pala Tribe held a hearing before Arbitrator Adler to resolve the dispute. On or about August 30, 2007, Arbitrator Adler issued a binding decision on said dispute ("the Arbitration Award"). A true and correct copy of the Arbitration Award is attached hereto as Exhibit D.

13. The Arbitration Award provides that "[t]he Employer is ordered to cease and desist from enforcing any rule regarding speech about the Union different from one enforced about any other non-work-related speech."

14. The Arbitration Award is final and binding upon the Pala Tribe.

15. The Pala Tribe has failed and refused to comply with the Arbitration Award.

16. In or about June 2007, the Union and the Pala Tribe arbitrated an unrelated dispute about the indefinite suspension of Catalino Morales's employment from the Pala Casino. On or about September 20, 2007, Arbitrator Franklin Silver issued an award ordering that Catalino Morales be returned to work. On or about October 18, 2007, Catalino Morales was scheduled to return to work at the Pala Casino in accordance with Arbitrator Silver's award.

17. On or about October 18, 2007, employees of the Pala Casino began distributing leaflets to fellow employees in the employee cafeteria and in an outdoor employee break area. A true and correct copy of the leaflet that employees sought to distribute is attached hereto as Exhibit E. Agents of the Pala Tribe stopped and prohibited employees from distributing such leaflets because the leaflets announced the Union's success in winning Catalino Morales's reinstatement.

18. On or about October 18, 2007, agents of the Pala Tribe prohibited employees of the Pala Casino from distributing slices of a cake to fellow employees in the employee cafeteria because the cake contained a message celebrating Catalino Morales's return to work.

---

19. The Pala Tribe does not prohibit employees of the Pala Casino from distributing leaflets that do not contain a prounion message in the employee cafeteria or the outdoor employee break area. The Pala Tribe does not prohibit employees from distributing slices of cake and other food items that do not contain a prounion message to fellow employees in the employee cafeteria. The Pala Tribe violated the Arbitration Award by prohibiting employees from distributing said leaflets and cake containing a prounion message.

20. Section 13(d) of the Gaming Compact's TLRO provides:

Under the third level of binding dispute resolution, either party may seek a motion to compel arbitration or a motion to confirm an arbitration award in Tribal Court, which may be appealed to federal court. If the Tribal Court does not render its decision within 90 days, or in the event there is no Tribal Court, the matter may proceed directly to federal court.

21. The Union brings this motion to confirm the Arbitration Award directly in this Court because the Pala Tribe does not have a court in which the Union may file this motion.

22. Pursuant to 9 U.S.C. §§ 9 and 13, the Union is entitled an order from this Court confirming and enforcing the Arbitration Award as a judgment of this Court.

WHEREFORE, Petitioner UNITE HERE International Union prays for an order:

1. Confirming the Arbitration Award and enforcing said award as a judgment of the Court;

2. Granting Petitioner its attorneys' fees, costs of suit and other expenses incurred herein; and

3. Granting such other and further relief as the Court deems proper.

Dated: December 7, 2007

Respectfully submitted,

DAVIS, COWELL & BOWE, LLP

By:_____

Kristin L. Martin
Attorneys for Petitioner,
UNITE HERE International Union

# TABLE OF CONTENTS

## INDEX

**Page Nos.**

| | |
|---|---|
| **Exhibit A** | 1 - 18 |
| **Exhibit B** | 19 |
| **Exhibit C** | 20 |
| **Exhibit D** | 21 - 28 |
| **Exhibit E** | 29 - 30 |

# TRIBAL-STATE COMPACT

# BETWEEN

# THE STATE OF CALIFORNIA

# AND THE

# PALA BAND OF MISSION INDIANS

## TRIBAL-STATE GAMING COMPACT
Between the PALA BAND OF MISSION INDIANS, a federally recognized Indian Tribe,

### and the
### STATE OF CALIFORNIA

This Tribal-State Gaming Compact is entered into on a government-to-government basis by and between the Pala Band of Mission Indians, a federally-recognized sovereign Indian tribe (hereafter "Tribe"), and the State of California, a sovereign State of the United States (hereafter "State"), pursuant to the Indian Gaming Regulatory Act of 1988 (P.L. 100-497, codified at 18 U.S.C. Sec. 1166 et seq. and 25 U.S.C. Sec. 2701 et seq.) (hereafter "IGRA"), and any successor statute or amendments.

### PREAMBLE

A. In 1988, Congress enacted IGRA as the federal statute governing Indian gaming in the United States. The purposes of IGRA are to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments; to provide a statutory basis for regulation of Indian gaming adequate to shield it from organized crime and other corrupting influences; to ensure that the Indian tribe is the primary beneficiary of the gaming operation; to ensure that gaming is conducted fairly and honestly by both the operator and players; and to declare that the establishment of an independent federal regulatory authority for gaming on Indian lands, federal standards for gaming on Indian lands, and a National Indian Gaming Commission are necessary to meet congressional concerns.

B. The system of regulation of Indian gaming fashioned by Congress in IGRA rests on an allocation of regulatory jurisdiction among the three sovereigns involved: the federal government, the state in which a tribe has land, and the tribe itself. IGRA makes Class III gaming activities lawful on the lands of federally-recognized Indian tribes only if such activities are: (1) authorized by a tribal ordinance, (2) located in a state that permits such gaming for any purpose by any person, organization or entity, and (3) conducted in conformity with a gaming compact entered into between the Indian tribe and the state and approved by the Secretary of the Interior.

C.    The Tribe does not currently operate a gaming facility that offers Class III gaming activities. However, on or after the effective date of this Compact, the Tribe intends to develop and operate a gaming facility offering Class III gaming activities on its reservation land, which is located in San Diego County of California.

D.    The State enters into this Compact out of respect for the sovereignty of the Tribe; in recognition of the historical fact that Indian gaming has become the single largest revenue-producing activity for Indian tribes in the United States; out of a desire to terminate pending "bad faith" litigation between the Tribe and the State; to initiate a new era of tribal-state cooperation in areas of mutual concern; out of a respect for the sentiment of the voters of California who, in approving Proposition 5, expressed their belief that the forms of gaming authorized herein should be allowed; and in anticipation of voter approval of SCA 11 as passed by the California legislature.

E.    The exclusive rights that Indian tribes in California, including the Tribe, will enjoy under this Compact create a unique opportunity for the Tribe to operate its Gaming Facility in an economic environment free of competition from the Class III gaming referred to in Section 4.0 of this Compact on non-Indian lands in California. The parties are mindful that this unique environment is of great economic value to the Tribe and the fact that income from Gaming Devices represents a substantial portion of the tribes' gaming revenues. In consideration for the exclusive rights enjoyed by the tribes, and in further consideration for the State's willingness to enter into this Compact, the tribes have agreed to provide to the State, on a sovereign-to-sovereign basis, a portion of its revenue from Gaming Devices.

F.    The State has a legitimate interest in promoting the purposes of IGRA for all federally-recognized Indian tribes in California, whether gaming or non-gaming. The State contends that it has an equally legitimate sovereign interest in regulating the growth of Class III gaming activities in California. The Tribe and the State share a joint sovereign interest in ensuring that tribal gaming activities are free from criminal and other undesirable elements.

Section 1.0. PURPOSES AND OBJECTIVES.

The terms of this Gaming Compact are designed and intended to:

(a)    Evidence the goodwill and cooperation of the Tribe and State in fostering a mutually respectful government-to-government relationship that will serve the mutual interests of the parties.

2

enforcement against the employer, and benefits comparable to those mandated for comparable employees under state law.  Not later than the effective date of this Compact, or 60 days prior to the commencement of Gaming Activities under this Compact, the Tribe will advise the State of its election to participate in the statutory workers' compensation system or, alternatively, will forward to the State all relevant ordinances that have been adopted and all other documents establishing the system and demonstrating that the system is fully operational and compliant with the comparability standard set forth above. The parties agree that independent contractors doing business with the Tribe must comply with all state workers' compensation laws and obligations.

(b) The Tribe agrees that its Gaming Operation will participate in the State's program for providing unemployment compensation benefits and unemployment compensation disability benefits with respect to employees employed at the Gaming Facility, including compliance with the provisions of the California Unemployment Insurance Code, and the Tribe consents to the jurisdiction of the state agencies charged with the enforcement of that Code and of the courts of the State of California for purposes of enforcement.

(c) As a matter of comity, with respect to persons employed at the Gaming Facility, other than members of the Tribe, the Tribal Gaming Operation shall withhold all taxes due to the State as provided in the California Unemployment Insurance Code and the Revenue and Taxation Code, and shall forward such amounts as provided in said Codes to the State.

Sec. 10.4. Emergency Service Accessibility. The Tribe shall make reasonable provisions for adequate emergency fire, medical, and related relief and disaster services for patrons and employees of the Gaming Facility.

Sec. 10.5. Alcoholic Beverage Service. Standards for alcohol service shall be subject to applicable law.

Sec. 10.6. Possession of firearms shall be prohibited at all times in the Gaming Facility except for state, local, or tribal security or law enforcement personnel authorized by tribal law and by federal or state law to possess fire arms at the Facility.

Sec. 10.7. Labor Relations.

Notwithstanding any other provision of this Compact, this Compact shall be null and void if, on or before October 13, 1999, the Tribe has not provided an agreement or other procedure acceptable to the State for addressing organizational and representational rights of Class III Gaming Employees and other employees associated with the Tribe's Class III gaming enterprise, such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees at the Gaming Facility or any

related facility, the only significant purpose of which is to facilitate patronage at the Gaming Facility.

Sec. 10.8. Off-Reservation Environmental Impacts.

Sec. 10.8.1. On or before the effective date of this Compact, or not less than 90 days prior to the commencement of a Project, as defined herein, the Tribe shall adopt an ordinance providing for the preparation, circulation, and consideration by the Tribe of environmental impact reports concerning potential off-Reservation environmental impacts of any and all Projects to be commenced on or after the effective date of this Compact. In fashioning the environmental protection ordinance, the Tribe will make a good faith effort to incorporate the policies and purposes of the National Environmental Policy Act and the California Environmental Quality Act consistent with the Tribe's governmental interests.

Sec. 10.8.2. (a) Prior to commencement of a Project, the Tribe will:

(1) Inform the public of the planned Project;

(2) Take appropriate actions to determine whether the project will have any significant adverse impacts on the off-Reservation environment;

(3) For the purpose of receiving and responding to comments, submit all environmental impact reports concerning the proposed Project to the State Clearinghouse in the Office of Planning and Research and the county board of supervisors, for distribution to the public.

(4) Consult with the board of supervisors of the county or counties within which the Tribe's Gaming Facility is located, or is to be located, and, if the Gaming Facility is within a city, with the city council, and if requested by the board or council, as the case may be, meet with them to discuss mitigation of significant adverse off-Reservation environmental impacts;

(5) Meet with and provide an opportunity for comment by those members of the public residing off-Reservation within the vicinity of the Gaming Facility such as might be adversely affected by proposed Project.

(b) During the conduct of a Project, the Tribe shall:

(1) Keep the board or council, as the case may be, and potentially affected members of the public apprized of the project's progress; and

(2) Make good faith efforts to mitigate any and all such significant adverse off-Reservation environmental impacts.

(c) As used in Section 10.8.1 and this Section 10.8.2, the term "Project" means any expansion or any significant renovation or modification of an existing Gaming Facility, or any significant excavation, construction, or development associated with the Tribe's Gaming Facility or proposed Gaming Facility and the term "environmental impact

33

Sec. 15.6. Representations.

By entering into this Compact, the Tribe expressly represents that, as of the date of the Tribe's execution of this Compact: (a) the undersigned has the authority to execute this Compact on behalf of his or her tribe and will provide written proof of such authority and ratification of this Compact by the tribal governing body no later than October 9, 1999; (b) the Tribe is (i) recognized as eligible by the Secretary of the Interior for special programs and services provided by the United States to Indians because of their status as Indians, and (ii) recognized by the Secretary of the Interior as possessing powers of self-government. In entering into this Compact, the State expressly relies upon the foregoing representations by the Tribe, and the State's entry into the Compact is expressly made contingent upon the truth of those representations as of the date of the Tribe's execution of this Compact. Failure to provide written proof of authority to execute this Compact or failure to provide written proof of ratification by the Tribe's governing body will give the State the opportunity to declare this Compact null and void.

**IN WITNESS WHEREOF,** the undersigned sign this Compact on behalf of the State of California and the Pala Band of Mission Indians.

Done at Sacramento, California, this 10th day of September 1999.

**STATE OF CALIFORNIA**

By Gray Davis
Governor of the State of California

**Pala Band of Mission Indians**

By Robert H. Smith
Chairperson of the Pala Band of Mission Indians

38

## ADDENDUM "B" TO TRIBAL-STATE GAMING COMPACT BETWEEN THE PALA BAND OF MISSION INDIANS AND THE STATE OF CALIFORNIA

In compliance with Section 10.7 of the Compact, the Tribe agrees to adopt an ordinance identical to the Model Tribal Labor Relations Ordinance attached hereto, and to notify the State of that adoption no later than October 12, 1999. If such notice has not been received by the State by October 13, 1999, this Compact shall be null and void. Failure of the Tribe to maintain the Ordinance in effect during the term of this Compact shall constitute a material breach entitling the State to terminate this Compact. No amendment of the Ordinance shall be effective unless approved by the State.

Attachment: Model Tribal Labor Relations Ordinance.

**IN WITNESS WHEREOF,** the undersigned sign this Addendum on behalf of the State of California and the Pala Band of Mission Indians.

**STATE OF CALIFORNIA**

By Gray Davis
Governor of the State of California

**PALA BAND OF MISSION INDIANS**

By Robert Smith
Chairperson of the Pala Band of Mission Indians

Executed this 8 day of October, 1999, at Sacramento, California.

Executed this 26 day of Sept., 1999, at Pala, California.

# # # #

Exhibit A
Page 7

**ATTEST:**



By Bill Jones
Secretary of State, State of California

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Exhibit A
Page 8

# ATTACHMENT TO
# ADDENDUM B

**Exhibit A**
**Page 9**

1
2

TRIBAL LABOR RELATIONS ORDINANCE
September 14, 1999

3
4   **Section 1: Threshold of applicability**
5

6          (a) Any tribe with 250 or more persons employed in a tribal casino
7   and related facility shall adopt this Tribal Labor Relations Ordinance (TLRO
8   or Ordinance).  For purposes of this ordinance, a "tribal casino" is one in
9   which class III gaming is conducted pursuant to a tribal-state compact.  A
10  "related facility" is one for which the only significant purpose is to facilitate
11  patronage of the class III gaming operations.
12

13         (b) Any tribe which does not operate such a tribal casino as of
14  September 10, 1999, but which subsequently opens a tribal casino, may
15  delay adoption of this ordinance until one year from the date the number of
16  employees in the tribal casino or related facility as defined in 1(a) above
17  exceeds 250.
18

19         (c) Upon the request of a labor union, the Tribal Gaming Commission
20  shall certify the number of employees in a tribal casino or other related
21  facility as defined in 1(a) above.  Either party may dispute the certification
22  of the Tribal Gaming Commission to the Tribal Labor Panel.
23

24  **Section 2: Definition of Eligible Employees**
25

26         (a) The provisions of this ordinance shall apply to any person
27  (hereinafter "Eligible Employee") who is employed within a tribal casino in
28  which Class III gaming is conducted pursuant to a tribal-state compact or
29  other related facility, the only significant purpose of which is to facilitate
30  patronage of the Class III gaming operations, except for any of the
31  following:
32

33         (1) any employee who is a supervisor, defined as any individual
34  having authority, in the interest of the tribe and/or employer, to hire,
35  transfer, suspend, lay off, recall, promote, discharge, assign, reward, or
36  discipline other employees, or responsibility to direct them or to adjust their
37  grievances, or effectively to recommend such action, if in connection with
38  the foregoing the exercise of such authority is not of a merely routine or
39  clerical nature, but requires the use of independent judgment;
40         (2)  any employee of the Tribal Gaming Commission;

**Exhibit A**
**Page 10**

2

1  (3) any employee of the security or surveillance department, other
2  than those who are responsible for the technical repair and maintenance of
3  equipment;
4  (4) any cash operations employee who is a "cage" employee or money
5  counter; or
6  (5) any dealer.

7  **Section 3: Non-interference with regulatory or security activities**

8  Operation of this Ordinance shall not interfere in any way with the
9  duty of the Tribal Gaming Commission to regulate the gaming operation in
10  accordance with the Tribe's National Indian Gaming Commission-approved
11  gaming ordinance. Furthermore, the exercise of rights hereunder shall in no
12  way interfere with the tribal casino's surveillance/security systems, or any
13  other internal controls system designed to protect the integrity of the tribe's
14  gaming operations. The Tribal Gaming Commission is specifically excluded
15  from the definition of tribe and its agents.

16  **Section 4: Eligible Employees free to engage in or refrain from**
17  **concerted activity**
18
19  Eligible Employees shall have the right to self-organization, to form,
20  to join, or assist employee organizations, to bargain collectively through
21  representatives of their own choosing, to engage in other concerted activities
22  for the purpose of collective bargaining or other mutual aid or protection,
23  and shall also have the right to refrain from any or all such activities.
24
25  **Section 5: Unfair Labor Practices for the tribe**
26
27  It shall be an unfair labor practice for the tribe and/or employer or
28  their agents:
29  (1) to interfere with, restrain or coerce Eligible Employees in the
30  exercise of the rights guaranteed herein;
31  (2) to dominate or interfere with the formation or administration of
32  any labor organization or contribute financial or other support to it, but this
33  does not restrict the tribe and/or employer and a certified union from
34  agreeing to union security or dues checkoff;
35  (3) to discharge or otherwise discriminate against an Eligible
36  Employee because s/he has filed charges or given testimony under this
37  Ordinance;

3

1       (4) to refuse to bargain collectively with the representatives of
2   Eligible Employees.
3
4   **Section 6: Unfair Labor Practices for the union**
5
6       It shall be an unfair labor practice for a labor organization or its
7   agents:
8       (1) to interfere, restrain or coerce Eligible Employees in the exercise
9   of the rights guaranteed herein;
10      (2) to engage in, or to induce or encourage any individual employed
11  by any person engaged in commerce or in an industry affecting commerce to
12  engage in, a strike or a primary or secondary boycott or a refusal in the
13  course of his employment to use, manufacture, process, transport or
14  otherwise handle or work on any goods, articles, materials, or commodities
15  or to perform any services; or to threaten, coerce, or restrain any person
16  engaged in commerce or in an industry affecting commerce or other terms
17  and conditions of employment. This section does not apply to section 11;
18      (3) to force or require the tribe and/or employer to recognize or
19  bargain with a particular labor organization as the representative of Eligible
20  Employees if another labor organization has been certified as the
21  representative of such Eligible Employees under the provisions of this
22  TLRO;
23      (4) to refuse to bargain collectively with the tribe and/or employer,
24  provided it is the representative of Eligible Employees subject to the
25  provisions herein;
26      (5) to attempt to influence the outcome of a tribal governmental
27  election, provided, however, that this section does not apply to tribal
28  members.
29
30  **Section 7: Tribe and union right to free speech**
31
32      The tribe's and union's expression of any view, argument or
33  opinion or the dissemination thereof, whether in written, printed, graphic or
34  visual form, shall not constitute or be evidence of interference with, restraint
35  or coercion if such expression contains no threat of reprisal or force or
36  promise of benefit.
37
38  **Section 8: Access to Eligible Employees**
39

4

1        (a) Access shall be granted to the union for the purposes of organizing
2 Eligible Employees, provided that such organizing activity shall not interfere
3 with patronage of the casino or related facility or with the normal work
4 routine of the Eligible Employees and shall be done on non-work time in
5 non-work areas that are designated as employee break rooms or locker
6 rooms that are not open to the public. The tribe may require the union and
7 or union organizers to be subject to the same licensing rules applied to
8 individuals or entities with similar levels of access to the casino or related
9 facility, provided that such licensing shall not be unreasonable,
10 discriminatory, or designed to impede access.
11
12        (b) The Tribe, in its discretion, may also designate additional
13 voluntary access to the Union in such areas as employee parking lots and
14 non-Casino facilities located on tribal lands.
15
16        (c) In determining whether organizing activities potentially interfere
17 with normal tribal work routines, the union's activities shall not be permitted
18 if the Tribal Labor Panel determines that they compromise the operation of
19 the casino:
20        (1) security and surveillance systems throughout the casino, and
21 reservation;
22        (2) access limitations designed to ensure security;
23        (3) internal controls designed to ensure security;
24        (4) other systems designed to protect the integrity of the tribe's
25 gaming operations, tribal property and/or safety of casino personnel, patrons,
26 employees or tribal members, residents, guests or invitees.
27
28        (d) The tribe shall provide to the union, upon a thirty percent (30%)
29 showing of interest to the Tribal Labor Panel, an election eligibility list
30 containing the full first and last name of the Eligible Employees within the
31 sought after bargaining unit and the Eligible Employees' last known address
32 within ten (10) working days. Nothing herein shall preclude a tribe from
33 voluntarily providing an election eligibility list at an earlier point of a union
34 organizing campaign.
35
36        (e) The tribe agrees to facilitate the dissemination of information
37 from the union to Eligible Employees at the tribal casino by allowing
38 posters, leaflets and other written materials to be posted in non-public
39 employee break areas where the tribe already posts announcements

5

1  pertaining to Eligible Employees. Actual posting of such posters, notices,
2  and other materials, shall be by employees desiring to post such materials.
3
4  **Section 9: Indian preference explicitly permitted**
5
6         Nothing herein shall preclude the tribe from giving Indian
7  preference in employment, promotion, seniority, lay-offs or retention to
8  members of any federally recognized Indian tribe or shall in any way affect
9  the tribe's right to follow tribal law, ordinances, personnel policies or the
10 tribe's customs or traditions regarding Indian preference in employment,
11 promotion, seniority, lay-offs or retention. Moreover, in the event of a
12 conflict between tribal law, tribal ordinance or the tribe's customs and
13 traditions regarding Indian preference and this Ordinance, the tribal law,
14 tribal ordinance or the tribe's customs and traditions shall govern.
15
16 **Section 10: Secret ballot elections required**
17
18         (a) Dated and signed authorized cards from thirty percent (30%) or
19 more of the Eligible Employees within the bargaining unit verified by the
20 elections officer will result in a secret ballot election to be held within 30
21 days from presentation to the elections officer.
22
23         (b) The election shall be conducted by the election officer. The
24 election officer shall be a member of the Tribal Labor Panel chosen pursuant
25 to the dispute resolution provisions herein. All questions concerning
26 representation of the tribe and/or Employer's Eligible Employees by a labor
27 organization shall be resolved by the election officer. The election officer
28 shall be chosen upon notification by the labor organization to the tribe of its
29 intention to present authorization cards, and the same election officer shall
30 preside thereafter for all proceedings under the request for recognition;
31 provided however that if the election officer resigns, dies or is incapacitated
32 for any other reason from performing the functions of this office, a substitute
33 election officer shall be selected in accordance with the dispute resolution
34 provisions herein.
35
36         (c) The election officer shall certify the labor organization as the
37 exclusive collective bargaining representative of a unit of employees if the
38 labor organization has received the majority of votes by employees voting in
39 a secret ballot election that the election officer determines to have been
40 conducted fairly. If the election officer determines that the election was

6

1   conducted unfairly due to misconduct by the tribe and/or employer or union,
2   the election officer may order a re-run election. If the election officer
3   determines that there was the commission of serious Unfair Labor Practices
4   by the tribe that interfere with the election process and preclude the holding
5   of a fair election, and the labor organization is able to demonstrate that it had
6   the support of a majority of the employees in the unit at any point before or
7   during the course of the tribe's misconduct, the election officer shall certify
8   the labor organization.
9
10          (d)  The tribe or the union may appeal any decision rendered after
11   the date of the election by the election officer to a three (3) member panel of
12   the Tribal Labor Panel mutually chosen by both parties.
13
14          (e)  A union which loses an election and has exhausted all dispute
15   remedies related to the election may not invoke any provisions of this labor
16   ordinance at that particular casino or related facility until one year after the
17   election was lost.
18
19   **Section 11: Collective bargaining impasse**
20
21          Upon recognition, the tribe and the union will negotiate in
22   good faith for a collective bargaining agreement covering bargaining unit
23   employees represented by the union.  If collective bargaining negotiations
24   result in impasse, and the matter has not been resolved by the tribal forum
25   procedures sets forth in Section 13 (b) governing resolution of impasse
26   within sixty (60) working days or such other time as mutually agreed to by
27   the parties, the union shall have the right to strike.  Strike-related picketing
28   shall not be conducted on Indian lands as defined in 25 U.S.C. Sec. 2703 (4).
29
30   **Section 12: Decertification of bargaining agent**
31
32          (a) The filing of a petition signed by thirty percent (30%) or more
33   of the Eligible Employees in a bargaining unit seeking the decertification of
34   a certified union, will result in a secret ballot election to be held 30 days
35   from the presentation of the petition.
36
37          (b)  The election shall be conducted by an election officer. The
38   election officer shall be a member of the Tribal Labor Panel chosen pursuant
39   to the dispute resolution provisions herein. All questions concerning the
40   decertification of the labor organization shall be resolved by an election

7

1   officer.  The election officer shall be chosen upon notification to the tribe
2   and the union of the intent of the employees to present a decertification
3   petition, and the same election officer shall preside thereafter for all
4   proceedings under the request for decertification; provided however that if
5   the election officer resigns, dies or is incapacitated for any other reason from
6   performing the functions of this office, a substitute election officer shall be
7   selected in accordance with the dispute resolution provisions herein.
8
9          (c)  The election officer shall order the labor organization
10  decertified as the exclusive collective bargaining representative if a majority
11  of the employees voting in a secret ballot election that the election officer
12  determines to have been conducted fairly vote to decertify the labor
13  organization.  If the election officer determines that the election was
14  conducted unfairly due to misconduct by the tribe and/or employer or the
15  union the election officer may order a re-run election or dismiss the
16  decertification petition.
17
18         (d) A decertification proceeding may not begin until one (1) year
19  after the certification of a labor union if there is no collective bargaining
20  agreement.  Where there is a collective bargaining agreement, a
21  decertification petition may only be filed no more than 90 days and no less
22  than 60 days prior to the expiration of a collective bargaining agreement.  A
23  decertification petition may be filed anytime after the expiration of a
24  collective bargaining agreement.
25
26         (e) The tribe or the union may appeal any decision rendered after
27  the date of the election by the election officer to a three (3) member panel of
28  the Tribal Labor Panel mutually chosen by both parties.
29
30  **Section 13: Binding dispute resolution mechanism**
31
32         (a) All issues shall be resolved exclusively through the binding
33  dispute resolution mechanisms herein, with the exception of a collective
34  bargaining negotiation impasse, which shall only go through the first level of
35  binding dispute resolution.
36
37         (b) The first level of binding dispute resolution for all matters
38  related to organizing, election procedures, alleged unfair labor practices, and
39  discharge of Eligible Employees shall be an appeal to a designated tribal
40  forum such as a Tribal Council, Business Committee, or Grievance Board.

Exhibit A
Page 16

8

1    The parties agree to pursue in good faith the expeditious resolution of these
2    matters within strict time limits. The time limits may not be extended
3    without the agreement of both parties. In the absence of a mutually
4    satisfactory resolution, either party may proceed to the independent binding
5    dispute resolution set forth below. The agreed upon time limits are set forth
6    as follows:
7
8        (1) All matters related to organizing, election procedures and
9    alleged unfair labor practices prior to the union becoming certified as the
10   collective bargaining representative of bargaining unit employees, shall be
11   resolved by the designated tribal forum within thirty (30) working days.
12       (2) All matters after the union has become certified as the
13   collective bargaining representative and relate specifically to impasse during
14   negotiations, shall be resolved by the designated tribal forum within sixty
15   (60) working days;
16
17       (c) The second level of binding dispute resolution shall be a
18   resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators
19   appointed by mutual selection of the parties which panel shall serve all tribes
20   that have adopted this ordinance. The Tribal Labor Panel shall have
21   authority to hire staff and take other actions necessary to conduct elections,
22   determine units, determine scope of negotiations, hold hearings, subpoena
23   witnesses, take testimony, and conduct all other activities needed to fulfill its
24   obligations under this Tribal Labor Relations Ordinance.
25
26       (1) Each member of the Tribal Labor Panel shall have relevant
27   experience in federal labor law and/or federal Indian law with preference
28   given to those with experience in both. Names of individuals may be
29   provided by such sources as, but not limited to, Indian Dispute Services,
30   Federal Mediation and Conciliation Service, and the American Academy of
31   Arbitrators.
32       (2) Unless either party objects, one arbitrator from the Tribal
33   Labor Panel will render a binding decision on the dispute under the
34   Ordinance. If either party objects, the dispute will be decided by a three-
35   member panel of the Tribal Labor Panel, which will render a binding
36   decision. In the event there is one arbitrator, five (5) Tribal Labor Panel
37   names shall be submitted to the parties and each party may strike no more
38   that two (2) names. In the event there is a three (3) member panel, seven (7)
39   TLP names shall be submitted to the parties and each party may strike no
40   more than two (2) names. A coin toss shall determine which party may

**Exhibit A**
**Page 17**

9

1    strike the first name. The arbitrator will generally follow the American
2    Arbitration Association's procedural rules relating to labor dispute
3    resolution.  The arbitrator or panel must render a written, binding decision
4    that complies in all respects with the provisions of this Ordinance.
5
6            (d) Under the third level of binding dispute resolution, either party
7    may seek a motion to compel arbitration or a motion to confirm an
8    arbitration award in Tribal Court, which may be appealed to federal court.  If
9    the Tribal Court does not render its decision within 90 days, or in the event
10   there is no Tribal Court, the matter may proceed directly to federal court.  In
11   the event the federal court declines jurisdiction, the tribe agrees to a limited
12   waiver of its sovereign immunity for the sole purpose of compelling
13   arbitration or confirming an arbitration award issued pursuant to the
14   Ordinance in the appropriate state superior court.   The parties are free to put
15   at issue whether or not the arbitration award exceeds the authority of the
16   Tribal Labor Panel.

**B**

Governor Gray Davis
State Capitol
Sacramento, California

Re:   <u>Notice of Adoption Of Tribal Labor Relations Ordinance</u>

Dear Governor Davis:

Pursuant to Section 10.7 of the Tribal-State Gaming Compact entered into by the Pala Band of Mission Indians, I hereby notify you that the Pala Band of Mission Indians adopted the Tribal Labor Relations Ordinance pursuant to Section 10.7 of the Tribal-State Gaming Compact on _Sept. 22 1999_

     I declare under penalty of perjury that the foregoing is true and correct.  Executed this _28_ day of _Sept._ , 1999, at _Pala_ , California.
(Day)        (Month)        (City)

_[signature]_
(Signature)

_Robert H. Smith_
(Print name)

_Chairman_
(Title)

_P.O. Box 50 Pala, Ca 92059_
(Address)

_Sept. 28, 1999_
(Date)

Consistent with 25 U.S.C.A. Sec. 2710 (d)(8), the Compact between the Sovereign
Nation of the Pala Band of Luiseno Mission Indians of the Pala Reservation and the
Sovereign State of California dated September 10, 1999, is hereby approved on this
_____ 5th _____ day of ____May____ , 2000, by the Assistant Secretary - Indian Affairs,
United States Department of the Interior.

UNITED STATES DEPARTMENT OF THE INTERIOR

Kevin Gover
Assistant Secretary - Indian Affairs

Exhibit C
Page 20

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

*Western Case Management Center*
John M. Bishop
Vice President
Jeffrey Garcia
Assistant Vice President

6795 North Palm Ave, 2nd Floor, Fresno, CA 93704
telephone: 877-528-0880 facsimile: 559-490-1919
internet: http://www.adr.org/

September 4, 2007

**VIA FACSIMILE ONLY**

Eric Myers
Davis, Cowell & Bowe LLP
595 Market Street, Suite 1400
San Francisco, CA 94105

Rodd Betts, Esq.
Paul, Plevin, Sullivan & Connaughton LLP
401 B Street, 10th Floor
San Diego, CA 92101

Re: 73 390 00371 06 LYMC
    UNITE HERE
    Hilario Cubias/Discipline
    and
    Pala Band of Mission Indians

Grievances:    Hilario Cubias/Discipline

Dear Parties:

By direction of the Arbitrator, enclosed please find the duly executed Award/Opinion.

The American Arbitration Association, in its monthly publications *Summary of Labor Arbitration Awards, Arbitration in the Schools* and *Labor Arbitration in Government*, reports arbitration decisions in labor cases. We would like to consider the enclosed case for reporting in a forthcoming issue. Absent an objection within one (1) month from the date of this letter, we will assume that you are agreeable to publication. However, if you wish to object, please send your letter directly to the Publications Dept, AAA, 1633 Broadway, 10th Floor, New York, NY 10019-6708.

Also, please be advised that it is the AAA's policy to retain awarded cases for a maximum period of fifteen (15) months from the date of the transmittal letter. Therefore, please take note that the above referenced case file will be destroyed 15 months from the date of this letter.

Thank you for choosing the American Arbitration Association.

Sincerely,
/s/
Lynn M. Cortinas - Case Manager
Direct: 559-490-1854 Fax: 559-490-1837 E-mail: cortinasl@adr.org
*Sandra L. Marshall- Supervisor: Direct: 559-490-1921/E-mail: marshalls@adr.org*

Enclosures

cc:    Sara Adler, Esq. – via electronic mail only
      David Rechs – via electronic mail only



ARBITRATION PROCEEDING

In the Matter of Arbitration      )
                                  )
        between                   )
                                  )    OPINION AND AWARD
UNITE HERE INTERNATIONAL UNION    )
                                  )    AAA #73 390 00371 06
        and                       )
                                  )
PALA BAND OF MISSION INDIANS      )
                                  )
Re: Cubias/Unfair Labor Practice )

The Undersigned was selected by the parties, UNITE HERE
(Union) and Pala Band of Mission Indians (Employer) to hear and
decide a grievance relating to the discipline of Hilario Cubias
(Cubias) in February and March, 2006. A hearing was held on
March 16, 2007 at the Employer's Casino. Eric Myers, Esq. of
Davis, Cowell & Bowe, LLP represented the Union. J. Rod Betts,
Esq. of Paul, Plevin, Sullivan & Connaughton, LLP represented
the Employer. At the conclusion of the hearing the parties
elected to submit final arguments in writing. The matter was
considered fully submitted upon my receipt of both post-hearing
briefs. The parties consented to a delay in the issuance of this
Opinion and Award.

During the course of the hearing both parties were afforded
a full and complete opportunity to present evidence, to cross-
examine witnesses and to develop argument. All witnesses were

duly sworn. A transcript of the hearing was prepared by Gail E. Kennamer, CSR.

## ISSUES

Initially the parties stipulated to the following statement of the Issues:

    1. Did the Tribe violate Section 5(1) of the Tribal Labor Relations Ordinance (TRLO) when it issued Hilario Cubias a verbal counseling on or about February 20, 2006?

    2. Did the Tribe violate Section 5(1) of the TLRO when it issued Hilario Cubias a final written warning on or about March 10, 2006?

    3. If either or both, what shall be the remedy?

The Employer then persuasively argued that these issues were moot because under the parties' Collective Bargaining Agreement (Agreement) the discipline had become null and void after the passage of one year from the date of imposition. The Union then argued persuasively that, although the discipline itself was moot, the Union's claim of a violation of Section 5(1) of the TLRO was not moot and should be heard. After off-

2

the-record discussion with counsel[1] and over the Employer's
objection, I refined the Issues as follows:

      1. Did the Tribe have a rule prohibiting union speech
         when it prohibited no other speech?

      2. If so, did that constitute an Unfair Labor Practice
         (ULP) under Section 5 of the TRLO?

      3. If so, what is the appropriate remedy?

### RELEVANT PROVISIONS OF THE TLRO

Section 4: Eligible Employees free to engage in or refrain from
concerted activity

    Eligible Employees shall have the right to self-
organization, to form, to join, or assist employee
organizations, to bargain collectively through representatives
of their own choosing, to engage in other concerted activities
for the purpose of collective bargaining or other mutual aid or
protection, and shall also have the right to refrain from any or
all such activities.

Section 5: Unfair Labor Practices for the Tribe

    It shall be an unfair labor practice for the tribe and/or
employer or their agents:

(1) to interfere with, restrain or coerce Eligible Employees in
the exercise of the rights guaranteed herein.

---

[1] During which counsel for the Employer was offered, and
declined, a continuance.

3

## STATEMENT OF RELEVANT FACTS

In February and March, 2006 the parties were engaged in negotiating their first Agreement. Cubias was a Union activist. Although the merits of the discipline of Cubias are irrelevant here, what occasioned the discipline is not. It is not necessary here, and I do not, decide if the Employer had just cause to discipline him, but the Employer's perception of the cause is crucial to the issues.

The Employer received reports that Cubias was interfering with the work of Guest Relations Associates (GRAs) during work hours in trying to get them more involved in the efforts of the Union. According to his own notes, Director of Housekeeping, Frank Clough (Clough) told Cubias "[I]f he wants to discuss union issues it has to be done while he is on break in the TDR, or before or after work. ... I told him that he could not discuss union issues nor could a GRA be watching TV or listening to the radio while cleaning the room." Lynda Jackson, Director of Human Resources, later told Cubias that, "talking in the tower was fine as long as it was work related." It is undisputed that, in fact, the Employer did not prohibit speech on other non-work topics during working hours, including other potentially disruptive topics such as politics. One of the Employer's witnesses, Veronica Frausto (Frausto) testified that she understood from her supervisor that they [the employees]

could talk about the union only in the TDR [break area]. Other employees at the time understood the rule to be that they could not talk about the Union during working time.

The Union here seeks a finding that the Employer committed a ULP and a remedy of posted notice.

## DISCUSSION

There is no dispute that the Employer did not have any written rule prohibiting speech about the Union during working hours. It also seems clear that there was an ad hoc rule articulated by agents of the Employer in dealing with what it perceived as a work-disruption issue. The ad hoc "not-on-worktime" rule is technically a ULP under the usual analysis used by the National Labor Relations Board[2] (NLRB) as it prohibited speech about the Union while not prohibiting other non-work-related speech. However, it also seems clear that the Employer's ad hoc rule was a misguided attempt to deal with work disruption, rather than as part of an anti-union policy either then or since evident in this record.

The National Labor Relations Act (NLRA) requires no specific remedies. Rather, what the NLRA requires is that remedies must promote the NLRA's policies. Those policies include restoring equality of bargaining power between employers

---

[2] I am aware of no jurisprudence under the TLRO and I, as did the parties, look to the NLRB for guidance.

5

and employees, encouraging the practice and procedure of collective bargaining, protecting the exercise by workers of full freedom of association, self-organization, and designation of representative of their own choosing, for the purpose of negotiating the terms and conditions of their employment, and other mutual aid or protection. The NLRB permits remedies other than posting, even when a violation of the NLRA has been found to have occurred. In the particular circumstances here, it is sufficient remedy to issue a cease and desist order.

## AWARD

Having carefully considered the evidence presented and the arguments made, it is the Award of the Arbitrator that:

1. The Employer had an ad hoc rule communicated to certain employees by the Employer's agents that speech about the Union could not occur during working time, while all other non-work-related speech was permitted.

2. That ad hoc rule constituted a ULP under the TLRO.

3. The Employer is ordered to cease and desist from enforcing any rule regarding speech about the Union different from one enforced about any other non-work-related speech.

6

DATED: August 30, 2007

Respectfully submitted,

*Sara Adler*

Sara Adler, Arbitrator

7

**UNITE HERE!**

# Voice of Pala Workers

## Union Wins Catalino Morales' Job With Full Back Pay

On September 20 2007, Tribal Labor Panel Arbitrator Frank Silver ruled against Pala management, and ordered Pala to return Casino housekeeper Catalino Morales to his job, with his back pay since he was removed from the schedule in July of 2006.

Arbitrator Silver's binding decision states that Pala Management's "decision to place Catalino Morales on [involuntary] leave of absence because his disability prevented him from performing all aspects of trash duty represented discrimination on the basis of disability"

¡Si se Puede!



*Catalino Morales and his wife Sofia Morales: Both work in the Casino housekeeping department.*

**HAS YOUR MANAGER PRESSURED YOU AT WORK?**

**HAVE YOU BEEN DISCIPLINED OR GOTTEN POINTS UNFAIRLY?**

Contact the Union Immediately for a Confidential Consultation at
956-699-3888

---

**UNITE HERE!**

# Voz de los Trabajadores de Pa[la]

## ¡La Union Gana el Trabajo de Catalino Morales y Su Sueldo Atrasado!

El 20 de Septiembre de 2007, el Arbitrador de la Comisión de Labor de las Tribus, Frank Silver, decidió en contra de la gerencia de Pala, y obligó a Pala regresar al trabajo a Catalino Morales, del Departamento de Housekeeping, y que reciba su salario atrasado desde el día que fue quitado de su horario de trabajo en Julio de 2006.

La decisión final del Arbitrador Silver dice: "la decisión de los manejadores de Pala puso a Catalino Morales en un ausencia de trabajo involuntaria porque su desabilidad le prohíbe de desarrollar todos los deberes de "trash duty" y esto fue descriminación en las bases de desabilidad"



*Catalino Morales y su esposa Sofia Morales: Ambos trabajan en el departamento de Limpieza del Casino*

**¿LE HA PRESIONADO SU MANEJADOR EN EL TRABAJO?**

**¿HA SIDO USTED DISCIPLINADO O OBTENIDO PUNTOS INJUSTAMENTE?**

Contacte a la Union inmediatamente para una consulta confidencial al
951-699-3888

¡Si se Puede!

Exhibit E
Page 29





JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITE HERE INTERNATIONAL UNION | PALA BAND OF MISSION INDIANS |

FILED

'07 CV 2312 W AJB

CLERK, U.S. DISTRICT COURT

DEPUTY

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF

(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  San Diego

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kristin L. Martin
DAVIS, COWELL & BOWE, LLP
595 Market Street, Suite 1400
San Francisco, CA 94105
415-597-7200

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Venue lies in the Southern District of California pursuant to 28 U.S.C. § 1391(b) and 9 U.S.C. § 9 because the arbitration proceedings involved herein were held and the award was made in San Diego County.

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Medical Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge 12 USC 3410 |
| [X] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | **LABOR** | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **HABEAS CORPUS:** | [ ] 740 Railway Labor Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | | | [ ] 890 Other Statutory Actions |
| [ ] 290 All Other Real Property | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Conditions | | | |

## VI. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [X] 1 Original Proceeding
- [ ] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: [ ] YES  [ ] NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  Docket Number _____

DATE
December 7, 2007

SIGNATURE OF ATTORNEY OF RECORD

#145397  12/10/07

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

#350.

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 145397    — SR**

**December 11, 2007
11:35:08**

**Civ Fil Non-Pris**
USAO #.: 07CV2312 CIV. FIL.
Judge..: THOMAS J WHELAN
Amount.:                    $350.00 CK
Check#.: BC#051666


**Total—>   $350.00**


FROM: UNITE HERE INTL UNION V.
      PALA BAND OF MISSION INDIANS
      CIVIL FILING