1   THEODORE R. SCOTT, Bar No. 108849
    LITTLER MENDELSON
2   A Professional Corporation
    501 W. Broadway, Suite 900
3   San Diego, CA  92101.3577
    Telephone:    619.515.1837
4   Facsimile:    619.615.2261

5   Attorneys for Respondent
    PALA BAND OF MISSION INDIANS
6

7

8                   UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITE HERE International Union,          Case No. 07-CV-2312 W (AJB)

12              Petitioner,                  **RESPONDENT PALA BAND OF MISSION
                                             INDIANS' MEMORANDUM OF POINTS
13        v.                                 AND AUTHORITIES IN SUPPORT OF
                                             MOTION TO DISMISS PETITION TO
14  PALA BAND OF MISSION INDIANS,            CONFIRM ARBITRATION AWARD

15              Respondent.                  Judge:    Thomas J. Whelan
                                             Ctrm:     7
16                                           Date:     10:30 a.m.
                                             Time:     May 5, 2008
17
                                             **[NO ORAL ARGUMENT PURSUANT TO
18                                           LOCAL RULE]**

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619.232.0441

FIRMWIDE:84743927.5 055243.1007                    Case No. 07-CV-2312 W (AJB)

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF THE CASE ..........................................................................2

    A.    The Parties And The Gaming Compact ...........................................................2

    B.    The Arbitration Award ....................................................................................2

    C.    The Tribal Court ..............................................................................................3

    D.    The Union Refuses To File A Petition To Confirm The Arbitration Award With The Tribal Court ...................................................................................3

III.  ARGUMENT ......................................................................................................5

    A.    Legal Standards For Rule 12 Motions ............................................................5

        1.    Rule 12(b)(1) ..........................................................................................5

        2.    Rule 12(b)(6) ..........................................................................................5

    B.    The Union Cannot Establish That This Court Has Subject Matter Jurisdiction Over The Petition....................................................................................6

        1.    Confirmation Of The Arbitration Award Does Not Require Resolution Of A Substantial Question Of Federal Law....................................6

        2.    Neither The IGRA Nor The Gaming Compact Create A Private Right Of Action Allowing The Union To Bring Suit To Enforce Their Provisions .............................................................................................9

        3.    The Union's Petition Must Be Dismissed Because Of The Pala Tribe's Sovereign Immunity ...........................................................11

    C.    The Union's Failure To File The Petition With The Tribal Court Requires That Its Petition Be Dismissed .........................................................13

IV.   CONCLUSION .................................................................................................14

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

# TABLE OF AUTHORITIES

PAGE

## CASES

*Anderson v. Clow,*
   89 F.3d 1399 (9th Cir. 1996) *cert. denied* 520 U.S. 1103 (1997) .................................6

*Balistreri v. Pacifica Police Dep't,*
   901 F.2d 696 (9th Cir. 1988) ....................................................................................5

*Beliveau v. Caras,*
   873 F.Supp. 1393 (C.D. Cal. 1995) ............................................................................6

*Bell v. Hood,*
   327 U.S. 678, 66 S.Ct. 773 (1946) .............................................................................7

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ......................................................................................6

*Cabazon Band of Mission Indians v. Wilson,*
   124 F.3d 1050 (9th Cir. 1997) ..................................................................................9

*Daly-Murphy v. Winston,*
   837 F.2d 348 (9th Cir. 1987) ..................................................................................13

*Dawavendewa v. Salt River Project Agric, Improvement & Power Dist.,*
   276 F.3d 1150 (9th Cir. 2002) ..........................................................................11, 12

*Dewberry v. Kulongoski,*
   406 F.Supp. 1136 (D. Or. 2005) .............................................................................11

*Epstein v. Washington Energy Co.,*
   83 F.3d 1136 (9th Cir. 1996) ....................................................................................6

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,*
   463 U.S. 1, 103 S.Ct. 2841 (1983) .........................................................................7, 8

*Hein v. Capitan Grande Band of Diegueno Mission Indians,*
   201 F.3d 1256 (9th Cir. 2000) ..........................................................................10, 11

*In re Indian Gaming Related Cases,*
   331 F.3d 1094 (9th Cir. 2003) ..........................................................................10, 11

*Kiowa Tribe v. Manufacturing Techs., Inc.,*
   523 U.S. 751, 118 S.Ct. 1700 (1998) ......................................................................11

*Littell v. Nakai,*
   244 F.2d 486 (9th Cir. 1965) .................................................................................8, 9

*Louisiana Power & Light Co. v. City of Thibodaux,*
   360 U.S. 25, 79 S.Ct. 1070 (1959) .........................................................................14

*Meyers v. Bethlehem Shipbuilding Co.,*
   303 U.S. 41, 58 S.Ct. 459 (1938) ...........................................................................13

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,*
   460 U.S. 1 (1983) ...................................................................................................7

*Parrino v. FHP, Inc.,*
   146 F.3d 699 (9th Cir. 1998) ....................................................................................6

LITTLER MENDELSON

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Peabody Coal Co. v. Navajo Nation,*
373 F.3d 945 (9th Cir. 2004) ...............................................................7, 8, 9

*Pennzoil Co. v. Texaco, Inc.,*
481 U.S. 1, 107 S.Ct. 1519 (1987) ................................................................14

*Steel Co. v. Citizens for a Better Environment,*
523 U.S. 83, 118 S.Ct. 1003 (1998) ...............................................................7

*Stock West, Inc. v. Confederated Tribes,*
873 F.2d 1221 (9th Cir. 1989) ........................................................................5

*Thompson v. Ill. Dept. of Prof. Reg.,*
300 F.3d 750 (7th Cir. 2002) ..........................................................................6

*Thornhill Publishing Co. v. General Tel. & Elect.,*
594 F.2d 730 (9th Cir. 1979) ..........................................................................5

*Transphase Systems v. Southern California Edison,*
839 F.Supp. 711 (C.D. Cal. 1993) .................................................................6

**STATUTES**

25 U.S.C.
Section 396a *et seq.* .......................................................................................7
Section 2701 et seq. ...............................................................................passim
Section 2710(d) ..............................................................................................2
Section 2711(d) ..............................................................................................2

28 U.S.C.
Section 1331 ............................................................................................passim

9 U.S.C.
Section 1 *et seq.* ............................................................................................7
Section 9 .........................................................................................................7

Federal Rule of Civil Procedure
Rule 12(b)(1) ..............................................................................................1, 5
Rule 12(b)(6) ...........................................................................................1, 5, 6

**OTHER AUTHORITIES**

2 *Moore's Federal Practice* § 12.34[1][b], p. 12-63 (3rd Ed. 2002) .............5, 6

1    Respondent PALA BAND OF MISSION INDIANS ("Pala Tribe") respectfully

2    moves for an order dismissing Petitioner's Petition to Confirm Arbitration Award pursuant to

3    Federal Rule of Civil Procedure 12(b)(1) and/or (6).

### I.
### INTRODUCTION

6    Petitioner UNITE HERE International Union ("Union") has filed a petition to

7    confirm an arbitration award finding that the Pala Tribe had an "ad hoc" rule that constituted an

8    unfair labor practice under the Tribal Labor Relations Ordinance ("TLRO"). The TLRO is part of

9    the Tribal-State Gaming Compact between the State of California and the Pala Tribe ("Gaming

10   Compact"). The Union claims that this Court may properly assert subject matter jurisdiction over its

11   petition because the Gaming Compact is a "creation of federal law." However, the Union's petition

12   merely seeks to confirm an arbitration award, and does not directly seek to enforce either the

13   Gaming Compact or the Indian Gaming Regulatory Act ("IGRA"), the only federal statute that is

14   even remotely relevant to the Union's claim of federal question jurisdiction. Accordingly,

15   confirmation of the arbitration award does not require resolution of a "substantial question of federal

16   law" as is required for this Court to assert subject matter jurisdiction under 28 U.S.C. § 1331.

17   Moreover, even if the petition does "arise under" federal law, this Court would still not have subject

18   matter jurisdiction because there is no private right of action to enforce either the Gaming Compact

19   or IGRA and because the Pala Tribe's sovereign immunity bars the Union's petition.

20   The Union's petition must also be dismissed because the Union failed to comply with

21   the procedural prerequisites established by the TLRO prior to filing its petition in this Court. The

22   TLRO requires a party seeking confirmation of an arbitration award to file a motion to do so "in

23   Tribal Court, which may be appealed to federal court." The Pala Tribe is a member of the Intertribal

24   Court of Southern California ("ICSC"), the "Tribal Court" contemplated by the TLRO. The Union

25   is therefore required to seek relief in the ICSC prior to filing a petition in this Court, something

26   which the Union has stubbornly refused to do. The Union's failure to exhaust the jurisdiction of the

27   ICSC prior to invoking the jurisdiction of this Court prevents this Court from considering the merits

28   of the Union's petition.

## II.
## STATEMENT OF THE CASE

### A.    The Parties And The Gaming Compact

The Union is a labor organization.  The Pala Tribe is an Indian tribe that is signatory to a Tribal-State Gaming Compact with the State of California, as permitted by the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq.  Petition, ¶¶ 4-6.  The Model Tribal Labor Relations Ordinance ("TLRO") is included as part of the Gaming Compact.  Id., ¶ 9.  The Union is not a party to the Gaming Compact, nor is the Union authorized by IGRA to bring suit to enforce the provisions of that statute.  PX A, pp. 1-2, 6;[1] 25 U.S.C. §§ 2710(d), 2711(d).  Moreover, the Gaming Compact includes a comprehensive dispute resolution provision expressly providing that only the State of California and the Pala Tribe may enforce the provisions of the Gaming Compact or be party to a court proceeding involving disputes under the Gaming Compact.  NOLX A, pp. 4-6.  The dispute resolution provision also expressly provides that the Pala Tribe may revoke its limited waiver of sovereign immunity contained in the Gaming Compact if any entity other than the State of California is a party to the court action at issue.  Id., p. 6.  However, the Union is party to a collective bargaining agreement with the Pala Tribe, entered into subsequent to the dispute addressed in the arbitration award that is the subject of the Union's petition to confirm.  PX D, pp. 23-24.

### B.    The Arbitration Award

On February 20, 2006 the Pala Tribe issued a verbal counseling to employee Hilario Cubias.  On March 10, 2006 the Pala Tribe issued a final written warning to Cubias.  PX D, p. 23.  The Union filed a grievance challenging the discipline, and on March 16, 2007, approximately 12 months after the disciplinary notices were issued, the grievance was arbitrated before Arbitrator Sara Adler.  Id., p.21.  On August 30, 2007 the Arbitrator issued an "Opinion and Award" in which she found that the Pala Tribe had an "ad hoc" rule that constituted an unfair labor practice under the TLRO.  Id., p. 27.  The arbitration award orders the Pala Tribe to "cease and desist from enforcing

---

[1] "PX" shall refer to the exhibits attached to the petition, followed by the appropriate exhibit and page reference(s); "NOLX" shall refer to the exhibits attached to the Notice of Lodgment of Exhibits in Support of Pala Band of Mission Indians' Motion to Dismiss Petition to Confirm Arbitration Award filed herewith, followed by the appropriate exhibit and page reference(s).

1   any rule regarding speech about the Union different from one enforced about any other nonwork-

2   related speech." Id. By its petition the Union seeks an order from this Court confirming the

3   arbitration award pursuant to Section 13(d) of the TLRO. Petition, ¶¶ 20-21. Section 13(d) provides

4   in its entirety as follows:

> (d) Under the third level of binding dispute resolution, either
> party may seek a motion to compel arbitration or a motion to confirm
> an arbitration award ***in Tribal Court***, which may be appealed to
> federal court. If the Tribal Court does not render its decision within 90
> days, or in the event there is no Tribal Court, the matter may proceed
> directly to federal court. In the event the federal court declines
> jurisdiction, the tribe agrees to a limited waiver of its sovereign
> immunity for the sole purpose of compelling arbitration or confirming
> an arbitration award issued pursuant to the Ordinance in the
> appropriate state superior court. The parties are free to put at issue
> whether or not the arbitration award exceeds the authority of the Tribal
> Labor Panel.

12  PX A, p. 18 (emphasis added).

13  **C.      The Tribal Court**

14          The Intertribal Court of Southern California ("ICSC") was created as a court of

15  record to provide member Native American tribes with a forum in which disputes can be resolved

16  consistent with the preservation of the integrity, autonomy and sovereignty of the tribes and the

17  traditions and culture of Indian Country. The ICSC has established a code of civil procedure and

18  rules of court for its operations. Tribes wishing to become a member of the ICSC are required to

19  enact an appropriate tribal resolution and agree to be bound by the ICSC's Intertribal Governing

20  Agreement. The Pala Tribe has been a member of the ICSC since at least January 2005. NOLX 2-6,

21  pp. 7-64.

22  **D.      The Union Refuses To File A Petition To Confirm The Arbitration Award With The
        Tribal Court**

24          On January 15, 2008 the Pala Tribe responded to the Union's petition through a letter

25  from counsel for the Pala Tribe to counsel for the Union advising that, pursuant to Section 13(d) of

26  the TLRO, any petition to confirm the arbitration award must initially be filed in the ICSC. The

27  letter further advised that if the Union insisted in pursuing its petition before this Court, the Pala

28  Tribe would file a motion to dismiss the petition and would also seek an award of attorneys fees and

1    costs in being required to do so.  NOLX 8, pp. 65-66.  Union counsel responded by letter dated

2    January 16, 2008 advising that she had previously spoken with "someone" at the ICSC and "learned"

3    that she "could not file a petition to confirm the arbitrator's award with either the Intertribal court or

4    a Court governing the Pala Band of Mission Indians."  NOLX 9, p. 67.

5              In response to Union counsel's assertion, counsel for the Pala Tribe contacted the

6    ICSC and confirmed with ICSC Court Administrator Temet Aguilar that the ICSC would assert

7    jurisdiction over any action seeking to confirm an arbitration award issued pursuant to the TLRO

8    and involving the Pala Tribe.  Scott Decl., p. 3/ll. 10-12.[2]  Accordingly, by letter dated February 1,

9    2008 counsel for the Pala Tribe advised Union counsel that she had been misinformed, reiterated that

10   the ICSC had jurisdiction over the matter and again urged her to dismiss the Union's petition filed in

11   this Court.  Union counsel was also again informed by the February 1 letter that the Pala Tribe

12   would file a motion to dismiss the petition and request its attorneys fees if the Union continued to

13   pursue its petition before this Court.  NOLX 10, p. 68.

14             Union counsel replied by letter dated February 5, 2008 stating that she could not

15   accept counsel's representation that the ICSC would assert jurisdiction over the petition because it

16   conflicted with what she was previously told by the ICSC's representatives.  NOLX 11, p. 69.

17   Union counsel also requested that she be provided with documents relating to the ICSC if Pala Tribe

18   counsel wished her to reconsider her position.  Id.  Accordingly, by letter dated February 22, 2008

19   counsel for the Pala Tribe provided Union counsel with copies of documents relating to the ICSC,

20   including Exhibits 2 through 4 and the last page of Exhibit 5 referenced above.  NOLX 12, p. 70.  He

21   also again suggested that the Union dismiss the petition pending before this Court and re-file the

22   petition with the ICSC.  Id.  Union counsel responded by letter dated March 10, 2008 and asserted

23   that the documents that had been provided conflicted with what she was told by a representative of

24   the ICSC.  NOLX 13, p. 72.

25             On March 14, 2008 counsel for the Pala Tribe had a telephone conversation with

26   Union counsel in which he again requested that the Union re-file its petition with the ICSC so that

27

28

---

[2] "Scott Decl." shall refer to the Declaration of Theodore R. Scott in Support of Respondent Pala Band of Mission Indians' Motion to Dismiss Petition to Confirm Arbitration Award.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

FIRMWIDE:84743927.5 055243.1007          4.          Case No. 07-CV-2312 W (AJB)

1  both the Union and the Pala Tribe could avoid the expense of litigating before this Court whether the

2  petition is required to be initially filed in the ICSC.  Union counsel refused to agree to do so.  Scott

3  Decl., p. 3/l. 27-p. 4/l. 2.  That same day counsel for the Pala Tribe sent Union counsel a letter

4  confirming their conversation and again advised that the Pala Tribe would seek attorneys fees and

5  costs if it was required to initially respond to the petition in this Court.  NOLX 14, p. 75.

**III.**
**ARGUMENT**

**A.**    **Legal Standards For Rule 12 Motions**

    **1.**    **Rule 12(b)(1)**

10  A case must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil

11  Procedure if the federal court lacks the statutory authority, or subject matter jurisdiction, to hear and

12  decide the dispute.  When subject matter jurisdiction is challenged, the party asserting the existence

13  of jurisdiction bears the burden of establishing that the federal court may properly assert jurisdiction

14  over the matter.  Accordingly, the federal court must presume it lacks jurisdiction unless and until

15  the petitioner can establish to the court's satisfaction that the matter is properly before the court.

16  *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  In making this

17  determination, the federal court may consider extrinsic evidence bearing on the jurisdictional issue,

18  and can resolve factual disputes in that evidence if necessary to determine the issue.  *Thornhill*

19  *Publishing Co. v. General Tel. & Elect.*, 594 F.2d 730, 733 (9th Cir. 1979).  Thus the federal court is

20  precluded from presuming the accuracy of the complaint's allegations relating to jurisdiction when

21  considering a challenge to subject matter jurisdiction.  Id.

    **2.**    **Rule 12(b)(6)**

23  A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is

24  proper when the complaint does not allege a claim supported by a cognizable legal theory or if the

25  complaint does not allege sufficient facts in support of a cognizable legal theory.  See *Balistreri v.*

26  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  While facts alleged in a complaint must

27  generally be accepted as true for purposes of Rule 12(b)(6), "this does not automatically extend to

28  bald assertions, subjective characterizations or legal conclusions."  2 *Moore's Federal Practice*, §

1    12.34[1][b], p. 12-63 (3rd Ed. 2002). Thus, "unwarranted inferences are insufficient to defeat a

2    motion to dismiss for failure to state a claim." *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir.

3    1996) *cert. denied* 520 U.S. 1103 (1997); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1139

4    (9th Cir. 1996); *Beliveau v. Caras*, 873 F.Supp. 1393, 1395-1396 (C.D. Cal. 1995) (while the court

5    must accept as true all material allegations in the complaint, it need only accept reasonable

6    inferences to be drawn therefrom); *Transphase Systems v. Southern California Edison*, 839 F.Supp.

7    711, 718 (C.D. Cal. 1993) (court need not accept as true conclusory allegations or unreasonable

8    inferences).

9          When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court may

10   consider the documents relied upon but not attached to the complaint when the authenticity of the

11   documents are not contested. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998); *Branch v.*

12   *Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504

13   (9th Cir. 1986). In addition, the court may consider "documents crucial to the plaintiff's claims, but

14   not explicitly incorporated in his complaint." *Parrino*, 146 F.3d at 706. When a written instrument

15   contradicts allegations in a complaint, "the exhibit trumps the allegations." *Thompson v. Ill. Dept. of*

16   *Prof. Reg.*, 300 F.3d 750, 754 (7th Cir. 2002).

**B.    The Union Cannot Establish That This Court Has Subject Matter Jurisdiction Over The Petition**

    **1.    Confirmation Of The Arbitration Award Does Not Require Resolution Of A Substantial Question Of Federal Law**

20         The petition alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1331

21   ("Section 1331"). Petition, ¶ 2.[3] Section 1331 grants the district courts with jurisdiction over "all

22   civil actions arising under the Constitution, laws, or treaties of the United States." It is well-

23   established that federal question jurisdiction under Section 1331's "arising under" standard is

24   appropriate only where "the right of the petitioners to recover under their complaint will be sustained

25   if the Constitution and laws of the United States are given one construction and will be defeated if

26   they are given another." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S.Ct.

---

[3] Although the petition actually references "25 U.S.C. § 1331," the context makes clear that the Union is claiming jurisdiction under 28 U.S.C. § 1331.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619 232 0441

FIRMWIDE:84743927.5 055243.1007          6.          Case No. 07-CV-2312 W (AJB)

1003, 1110 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685, 66 S.Ct. 773, 777 (1946). As stated in *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 103 S.Ct. 2841 (1983), for a case to "arise under" federal law, a plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Id., 463 U.S. at 27-28, 103 S.Ct. at 2856.

Here the Union simply seeks to confirm an arbitration award. Absent extreme circumstances that are not presented by the allegations of the Union's petition, confirmation of an arbitration award (if the jurisdiction of the federal court has properly been invoked) borders on being a ministerial act. See 9 U.S.C. § 9.[4] While the Union seeks to bootstrap federal jurisdiction from its contention that the Gaming Compact "is a creation of federal law" (Petition, ¶ 2), there is no reason to anticipate that whether an order confirming the award should be issued will depend on "resolution of a substantial question" regarding the Gaming Compact. Moreover, Ninth Circuit law is clear that a petition to confirm an arbitration award does not "arise under" federal law pursuant to Section 1331 even though the arbitration award flows from a federal statute.

In *Peabody Coal Co. v. Navajo Nation*, 373 F.3d 945 (9th Cir. 2004), the plaintiff coal company and the Navajo Nation entered into a number of leases allowing the company to mine coal deposits on Navajo lands in exchange for royalty payments to be made to the Navajo Nation. The lease agreements were approved by the Secretary of the Department of the Interior as required under the Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a *et seq*. An arbitration award resolving issues relating to some royalty payments under the leases was stipulated to by the coal company and the Navajo Nation, and the coal company subsequently filed an action in federal district court seeking an order enforcing the arbitration award. The district court granted the Navajo Nation's motion to dismiss for lack of federal question subject matter jurisdiction under Section 1331, finding that enforcement of the arbitration award did not raise a substantial question

---

[4] It is well-settled that the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, does not provide an independent basis for Section 1331 jurisdiction. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32 (1983).

LITTLER MENDELSON
a professional corporation
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

FIRMWIDE:84743927.5 055243.1007          7.          Case No. 07-CV-2312 W (AJB)

1  concerning the underlying leases or the process whereby the Secretary of the Interior approved the

2  leases, and therefore did not raise a substantial question of federal law. Id. at 946, 948.

3          The Ninth Circuit agreed with the district court's determination. Initially, the Ninth

4  Circuit noted that because the coal company was not bringing a cause of action created by federal

5  law, the company was required to establish "that its 'right to relief necessarily depends on resolution

6  of a substantial question of federal law'." Id. at 949 (quoting *Franchise Tax Bd. v. Constr. Laborers*

7  *Trust*, 463 U.S. at 27-28, 103 S. Ct. 2841). The Ninth Circuit then rejected the company's argument

8  that the Secretary's approval of the leases and the general federal regulatory scheme governing

9  mineral leases with Indian tribes raised an issue of federal law. Id. In doing so, the Ninth Circuit

10  pointedly noted that the fact that a contract has been approved pursuant to federal law does not

11  create federal jurisdiction under Section 1331, even though the federal court might be called upon to

12  interpret the contract in resolving the complaint. Id. The Ninth Circuit also rejected the company's

13  attempts to shoe-horn its jurisdictional claims into cases where the dispute directly involved the

14  validity of federally regulated leases, writing:

15      This case is thus markedly different from the decisions cited above.
16  Peabody does not contest the validity of the coal mining leases or their
    amendments, nor does it allege that the Navajo Nation has breached a
17  lease or lease amendment. The Navajo Nation has not attempted to
    exceed its authority by regulating any aspect of Peabody's commercial
18  enterprise under tribal law. Navajo tribal courts have not attempted to
    subject Peabody to their jurisdiction. In cases where a Native
19  sovereign has not tried to assert authority over a non-Native party, and
    where the validity of a federally-regulated contract is not at issue,
20  courts have not found a substantial federal question to be present. *See,*
    *e.g., Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca*
21  *Indians*, 94 F.3d 747, 752-53 (2d Cir.1996) (holding that where the
    validity of a contract was not disputed, the fact of federal review and
22  approval did not convert a simple breach of contract claim into a
    federal cause of action); *Tamiami Partners, Ltd. v. Miccosukee Tribe*
23  *of Indians*, 999 F.2d 503, 507 (11th Cir.1993) (finding no federal
    question jurisdiction where plaintiff only presented facts establishing a
24  breach of contract claim); *Littell*, 344 F.2d at 487-88 (holding that
    there is no federal question where the main dispute is centered on a
25  contract and its construction, rather than the validity of the federal
    approval of the contract); *accord Gila River Indian Cmty.*, 626 F.2d at
26  714-15. As in these cases, Peabody's claim for enforcement of an
    arbitration award sounds in general contract law and does not require
27  the resolution of a substantial question of federal law.

28  / / / /

LITTLER MENDELSON

1    Id. at 951 (footnotes omitted). Having previously determined that the company's complaint sought

2    "enforcement of the final arbitration award, not the underlying leases or lease amendments" (id. at

3    949), the Ninth Circuit concluded:

4    　　　　Whether the Navajo Nation is somehow in breach of this award is an
　　　　issue that can be resolved by the common law of contracts. Federal
5    　　　　approval of the underlying leases or amendments has no material
　　　　bearing on whether this award requires confirmation or enforcement.
6    　　　　Therefore, Peabody's complaint does not present a federal question.

7    Id. at 951-952.

8    　　　　So it is here. Although the Union's petition cites *Cabazon Band of Mission Indians v.*

9    *Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997), in support of its claim of Section 1331 jurisdiction

10   (Petition, ¶ 2), *Cabazon* is clearly not on point. In *Cabazon* the plaintiff tribes directly sought

11   enforcement of their gaming compacts in an action filed against the State of California, while the

12   State argued, in part, that the provisions of the compact at issue were invalid and unenforceable. Id.

13   at 1057. Here the Union's petition does not challenge the validity of the TLRO, the Gaming

14   Compact or the IGRA. The Union only seeks to confirm an arbitration award. That the arbitration

15   procedure that resulted in the award is contained within a gaming compact between the State of

16   California and the Pala Tribe that has been approved by the federal government does not create

17   subject matter jurisdiction under Section 1331. Thus, and assuming *Cabazon*'s discussion of Section

18   1331 in relation to tribal-state gaming compacts is still good law after *Peabody v. Navajo Nation*,[5] it

19   does not apply to the Union's petition in this case. Because the Union cannot demonstrate that its

20   petition turns on a substantial question of federal law, the petition is not within this Court's subject

21   matter jurisdiction under Section 1331.

22   　　　**2.**　　　**Neither The IGRA Nor The Gaming Compact Create A Private Right Of Action**
　　　　　　　　**Allowing The Union To Bring Suit To Enforce Their Provisions**
23

24   　　　　Even if this Court were to find that the Union's petition "arises under" federal law for

25   purposes of Section 1331 jurisdiction because the petition requires the resolution of substantial

26

---

27   [5] *Peabody* cites with approval the holding of *Littell v. Nakai*, 244 F.2d 486 (9th Cir. 1965), that
"there is no federal question where the main dispute is centered on a contract and its construction,
28   rather than the validity of the federal approval of the contract." *Peabody*, 373 F.3d at 951.

issues of federal law, the Court still cannot assert jurisdiction. The "federal law" on which the

Union asserts its petition is based is the Gaming Compact. Petition, ¶ 2. The Gaming Compact can

only be considered "federal law" (if at all) by virtue of the IGRA because the Gaming Compact

could not exist but for the authorization provided by IGRA. See *In re Indian Gaming Related Cases*,

331 F.3d 1094, 1096-1098 (9th Cir. 2003). Accordingly, any right of action to enforce the Gaming

Compact is necessarily dependent on a private right of action to enforce IGRA, and the Ninth Circuit

has squarely held that no such private right of action exists.

In *Hein v. Capitan Grande Band of Diegueno Mission Indians*, 201 F.3d 1256 (9th

Cir. 2000), individual members of an Indian tribe (the "Splinter Group") filed suit in federal court in

an effort to require another Indian tribe with which they had previously been affiliated (the "Barona

Group") to share with them proceeds from the Barona Group's gaming operations. The Splinter

Group contended in part that the district court had jurisdiction over their claims because their suit

was brought to enforce IGRA. The district court disagreed, finding that the plaintiffs had no right to

maintain a claim under IGRA. Id. at 1258. The Ninth Circuit agreed with the district court,

analyzing the issue as follows:

> Plaintiffs next argue that they may bring a direct action under IGRA
> because that statute authorizes private suits to enforce its provisions.
> However, where IGRA creates a private cause of action, it does so
> explicitly. For example, it specifically provides for suit by an Indian
> tribe to compel action by the Commission to approve or disapprove
> management contracts, 25 U.S.C. § 2711(d), and also explicitly allows
> for tribes to sue states under some circumstances. 25 U.S.C. § 2710(d).
> The existence of such explicit provisions authorizing suits persuaded
> the Eleventh Circuit that plaintiffs could not sue for every violation of
> IGRA by direct action under the statute. *Tamiami Partners v.
> Miccosukee Tribe of Indians of Florida*, 63 F.3d 1030, 1049 (11th
> Cir.1995). We agree with the Eleventh Circuit's conclusion. Where a
> statute creates a comprehensive regulatory scheme and provides for
> particular remedies, courts should not expand the coverage of the
> statute. *See National R.R. Passenger Corp. v. National Assoc. of R.R.
> Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

Id. at 1260 (footnotes omitted).

Nowhere does the IGRA permit a private party to bring an action in federal court to

confirm an arbitration award issued after an arbitration procedure contained within a Tribal-State

gaming compact. In fact, the few actions that are available under IGRA must be initiated by either

LITTLER MENDELSON

1    an Indian tribe, a State or the federal government.  Id.  Indeed, that only governmental entities may

2    bring suit under IGRA is consistent with the "cooperative federalism" that serves as the basis for

3    IGRA.  *In re Indian Gaming Cases*, 331 F.3d at 1098 ("IGRA is an example of 'cooperative

4    federalism' in that it seeks to balance the competing sovereign interests of the federal government,

5    state governments, and Indian tribes, by giving each a role in the regulatory scheme").

6            Thus, the Union cannot rely on IGRA to support its claim of federal jurisdiction.  It

7    also logically follows that if IGRA does not provide a private right of action, neither can a Tribal-

8    State gaming compact, as at least one federal district court has held.  *Dewberry v. Kulongoski*, 406

9    F.Supp. 1136, 1146 (D. Or. 2005) ("no private cause of action exists to enforce a gaming compact

10   under IGRA.  [Citation to Hein v. Capitan Grande Band]").

11           That the Union cannot maintain a petition in federal court seeking to enforce the

12   Gaming Compact is also evidenced by the terms of the Gaming Compact itself.  Similar to

13   commercial agreements, the Gaming Compact contains a comprehensive enforcement scheme, set

14   out in Section 9 of the Compact.  NOLX 1, pp. 4-6.  That enforcement scheme is specifically

15   predicated on "recognition of the government-to-government relationship of the Tribe to the State,"

16   allows only the actual parties to the Gaming Compact to invoke its procedures, and is applicable to

17   the Pala Tribe and the State of California only.  Id.  The fact that the Gaming Compact does not

18   provide for enforcement by a private party such as the Union provides an additional reason why this

19   Court may not assert jurisdiction over the Union's petition.

20       **3.    The Union's Petition Must Be Dismissed Because Of The Pala Tribe's Sovereign
             Immunity**

21

22           It is black-letter law that Indian tribes enjoy sovereign immunity from suit and may

23   not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of

24   tribal immunity by Congress.  *Kiowa Tribe v. Manufacturing Techs., Inc.*, 523 U.S. 751, 754, 118

25   S.Ct. 1700, 1702-1703 (1998); *Dawavendewa v. Salt River Project Agric, Improvement & Power

26   Dist.*, 276 F.3d 1150, 1159 (9th Cir. 2002).  As explained in Subsection 2 above, IGRA did not

27   abrogate the Pala Tribe's sovereign immunity with respect to any action other than those specifically

28   permitted under IGRA.  While it can be argued that the Pala Tribe waived its sovereign immunity to

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

FIRMWIDE:84743927.5 055243.1007                11.                Case No. 07-CV-2312 W (AJB)

1  some degree through the provisions of Section 9 of the Gaming Compact, any waiver clearly extends

2  only to suits brought by the State of California.  Indeed, the Gaming Compact expressly states that to

3  the extent the Pala Tribe has waived sovereign immunity concerning particular actions that might be

4  initiated by the State of California to enforce the Gaming Compact, its immunity remains intact with

5  respect to any other party.  NOLX 1, p. 6 ("nothing herein shall be construed to constitute a waiver

6  of the sovereign immunity of either the Tribe or the State in respect to any such third party").

7  Accordingly, even if the Court should determine that it may assert subject matter jurisdiction over

8  the Union's petition because resolution of the petition will require resolution of a significant issue of

9  federal law, and also finds that the Union may bring a private action to enforce IGRA and the Tribal

10  Compact, it still must dismiss the petition due to the Pala Tribe's sovereign immunity.

11          It is anticipated that the Union will argue that the Pala Tribe waived its sovereign

12  immunity by agreeing to the Section 13(d) of the TLRO.  However, this argument is contrary to both

13  the language of the TLRO and Section 9 of the Gaming Compact.  As explained above, only the

14  State of California can bring an action to enforce the provisions of the Gaming Compact, which

15  includes the TLRO.  Thus, the reference to "party" in the TLRO is properly interpreted as referring

16  to either the State of California or the Pala Tribe, the only "parties" to the TLRO and the Gaming

17  Compact.  This language certainly does not constitute an "express and unequivocal waiver of

18  immunity" as is required by Indian law jurisprudence.  See *Dawavendewa*, 276 F.3d at 1159.

19  Moreover, the limited waiver of sovereign immunity contained in Section 13(d) applies only to a

20  petition to confirm an arbitration award in **state** court.  PX A, p. 18 ("In the event the federal court

21  declines jurisdiction, the tribe agrees to a limited waiver of its sovereign immunity for the sole

22  purpose of compelling arbitration or confirming an arbitration award  issued pursuant to the

23  Ordinance *in the appropriate state superior court*") (emphasis added).[6]

24          Finally, the express language of the TLRO contains one more basis upon which this

25  Court must dismiss the Union's petition, as will now be explained.

26

27  [6] It is clear from this language that the drafters of the TLRO anticipated that the federal courts would
    not have subject matter jurisdiction over a petition to confirm an arbitration award resulting from
28  proceedings under the TLRO.

C.    **The Union's Failure To File The Petition With The Tribal Court Requires That Its Petition Be Dismissed**

Paragraph 20 of the Union's petition accurately quotes the language in Section 13(d) of the TLRO requiring a party who wishes to confirm an arbitration award under the TLRO to initially file the petition in Tribal Court, with a possible appeal to federal court thereafter. Id.; see also PX A, p. 18. However, the Union alleges that the Pala Tribe "does not have a court in which the Union may file this motion." Petition, ¶ 21. The Union's allegation is false, and the Union knows it is false.

As is more fully explained in Part II(C) above, the Pala Tribe is a member of the Intertribal Court of Southern California ("ICSC"). The ICSC will assert jurisdiction over a petition to confirm an arbitration award issued following an arbitration involving the TLRO if it is asked to do so. The Pala Tribe repeatedly advised the Union of the existence of the ICSC and asked it to file its petition with the ICSC so that this motion would not be necessary. For whatever reason, the Union refused to do so. The Union's stubborn behavior has resulted in the Pala Tribe being required to expend its resources responding to the Union's petition before this Court, and has required this Court to expend its resources dealing with a case that should never have been placed on its docket.[7]

By failing to comply with the requirements of the TLRO and refusing to file its petition with the ICSC, the Union has frustrated the process agreed to by the State of California and the Pala Tribe in the Gaming Compact. The Union's behavior is substantially the same as a failure to exhaust other required remedies prior to filing a complaint with the Court, and should be dealt with in a similar fashion. See, i.e., *Meyers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-464 (1938) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted . . . (even where) the contention is made that the administrative body lacked power over the subject matter"); *Daly-Murphy v. Winston*, 837 F.2d 348, 354 (9th Cir. 1987). Additionally, because the sovereignty of the Pala Tribe and utilization of a tribunal that is sensitive to its status are entitled to respect, there are even more

---

[7] The Pala Tribe intends to file a motion for Rule 11 sanctions if the Union does not withdraw its petition within the applicable period of time.

1    compelling policies requiring that this Court defer to the ICSC. See, i.e., *Pennzoil Co. v. Texaco,*

2    *Inc.*, 481 U.S. 1, 11-12, 107 S.Ct. 1519, 1526-1527, n9 (1987); *Louisiana Power & Light Co. v. City*

3    *of Thibodaux*, 360 U.S. 25, 28, 79 S.Ct. 1070, 1072-1073 (1959).

4              The Union should not have made the false allegation that the Pala Tribe is not a

5    member of a Tribal Court when invoking this Court's jurisdiction. It most certainly cannot rely on

6    that allegation given the undisputable evidence that the Pala Tribe is a member of the ICSC and that

7    the ICSC will assert jurisdiction over the Union's petition if it is asked to do so. While it may be

8    difficult to determine whether the existence and availability of the ICSC defeats this Court's subject

9    matter jurisdiction or results in a failure by the Union to state a claim upon which relief can be

10   granted, it is certainly clear that the Union's petition must be dismissed because the Union failed to

11   petition the ICSC for relief in the first instance.

12                                      **IV.**
                                   **CONCLUSION**
13

14             For the foregoing reasons, Respondent Pala Tribe respectfully requests that this Court

15   grant its motion and dismiss the Union's petition.

16   Dated: April 4, 2008                        Respectfully submitted,

17

18                                               s/Theodore R. Scott
                                                 THEODORE R. SCOTT
19                                               LITTLER MENDELSON
                                                 A Professional Corporation
20                                               Attorneys for Respondent
                                                 PALA BAND OF MISSION INDIANS
21                                               E-mail:  tscott@littler.com

22

23

24

25

26

27

28