1  Kristin L. Martin, #206528
   DAVIS, COWELL & BOWE, LLP
2  595 Market Street, Suite 1400
   San Francisco, California 94105
3  Phone:  (415) 597-7200
   Facsimile:  (415) 597-7201
4  Email: klm@dcbsf.com

5  Attorneys for Petitioner
   UNITE HERE International Union
6

7                    UNITED STATES DISTRICT COURT

8              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

9

10 UNITE HERE International Union,          CASE NO. 07-CV-2312 W (AJB)

11                    Petitioner,           **PETITIONER UNITE HERE
                                            INTERNATIONAL UNION'S
12         v.                               MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN OPPOSITION TO
13 PALA BAND OF MISSION INDIANS,            RESPONDENT'S MOTION TO
                                            DISMISS; REQUEST FOR RULE 56(f)
14                    Respondent.           CONTINUANCE**

15                                          Judge:      Thomas J. Whelan
                                            Date:       10:30 a.m.
16                                          Time:       May 19, 2008

17

18

19

20

21

22

23

24

25

26

**Petitioner's MPAs In Opposition to Motion to Dismiss**
**Request for Rule 56(f) Continuance**                    **Case No. 07-CV-2312 W (AJB)**

1

2

## TABLE OF CONTENTS

3

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6

I.    Federal courts have subject-matter jurisdiction over suits to enforce
      Tribal-State Gaming Compacts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7

8

      A.    Tribal-State Gaming Compacts are a creation of federal
            statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9

      B.    The Ninth Circuit's <u>Cabazon</u> decision forecloses the
            Pala Band's argument that jurisdiction is lacking . . . . . . . . . . . . . . 6

10

11

      C.    It makes no difference that UNITE HERE seeks to
            confirm an arbitration award instead of litigating the
            underlying Compact breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

13

      D.    <u>Peabody Coal</u> did not involve an IGRA compact. . . . . . . . . . . . . . . 8

14

II.   There is a private right of action to confirm the arbitration award . . . . . . . . . . . . 9

15

16

      A.    There is a private right of action to enforce the terms of
            IGRA Compacts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

17

      B.    The Federal Arbitration Act creates a cause of action to
            confirm an arbitration award . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18

19

III.  The Pala Band waived its sovereign immunity by agreeing to arbitrate
      disputes under the TLRO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20

21

      A.    An agreement to arbitrate constitutes a waiver of
            sovereign immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

22

      B.    UNITE HERE can enforce the TLRO  . . . . . . . . . . . . . . . . . . . . . . 13

23

24

25

26

**Petitioner's MPAs In Opposition to Motion to Dismiss**
**Request for Rule 56(f) Continuance**          i          **Case No. 07-CV-2312 W (AJB)**

1

2

**TABLE OF CONTENTS**

3

IV.    UNITE HERE exhausted existing tribal court remedies . . . . . . . . . . . . . . . . . . . . . 15

4

          A.    It was impossible for UNITE HERE to file this case in

5

              the Intertribal Court of Southern California. . . . . . . . . . . . . . . . . . 15

6

          B.    Exhaustion of tribal remedies is not required in a

7

              non-functioning tribal court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

8

V.    If the Court does not deny the Pala Band's motion to dismiss, the motion
     should be converted to a Rule 56 motion for summary judgment and

9

     continued to allow UNITE HERE to conduct discovery . . . . . . . . . . . . . . . . . . . 18

10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

11

12

**INDEX OF EXHIBITS**

13

DECLARATION OF KRISTIN L. MARTIN

14

| Exhibit | Page(s) | Description |
|---|---|---|
| Exhibit A | | Fax from Intertribal Court (November 1, 2007) |
| Exhibit B | | Letter from Martin to Scott (March 10, 2008) |
| Exhibit C | | Arbitration Award of Catherine Harris, <u>Unite HERE v. Pauma Band of Mission Indians</u> (June 12, 2006) |
| Exhibit D | | Arbitration Award of Gerald McKay, <u>Barona Band of Mission Indians and Hotel Employees and Restaurant Employees Int'l Union</u> (February 4, 2003) |
| Exhibit E | | Arbitration Award of Gerald McKay, <u>Barona Band of Mission Indians and Hotel Employees and Restaurant Employees Int'l Union</u> (December 2, 2003) |
| Exhibit F | | Arbitration Award of Raul Ramirez, <u>Hotel Employees and Restaurant Employees Int'l Union and Agua Caliente Band of Cahuilla Indians</u> (March 3, 2004) |
| Exhibit G | | Letter from Scott to Martin (February 22, 2008) |

15

16

17

18

19

20

21

22

23

24

25

26

1

2

**TABLE OF AUTHORITIES**

3

CASES

4

American Vantage Cos., Inc. v. Table Mountain Rancheria
5          292 F.3d 1091 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6   C&L Enterprises, Inc. v. Citizen Band of Potawatami Indian Tribe
           532 U.S. 411 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12
7

8   Cabazon Band of Mission Indians v. Wilson
           124 F.3d 1050 (9th Cir. 1997), *cert. denied* 524 U.S. 926 (1998) . . . . . 1, 6, 7, 8, 9

9   Comstock Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas
           261 F.3d 567 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
10

11  Confederated Tribes of Siletz Indians of Oregon v. State of Oregon
           143 F.3d 481 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
12

13  Dewberry v. Kulongoski
        406 F.Supp.2d 1136 (D. Or. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
14

15  Franchise Tax Bd. v. Construction Laborers Vacation Trust
           463 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16  Gaming World Int'l Ltd. v. White Earth Band of Chippewa Indians
           317 F.3d 840 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17

18  Gila River Indian Community v. Henningson, Durham & Richardson
           626 F.2d 708 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19  Hein v. Capitan Grande Band of Digueno Mission Indians
           201 F.3d 1256 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
20

21  Howlett v. Salish & Kootenal Tribes
           529 F.2d 233 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
22

23  Idaho v. Shoshone-Bannock Tribes
           465 F.3d 1095 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15
24

25  In re Indian Gaming Related Cases
           331 F.3d 1094 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

26

1

2

**TABLE OF AUTHORITIES**

3

CASES

4

Johnson v. Gila River Indian Community
    174 F.3d 1032 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Kasap v. Folger Nolan Fleming & Douglas, Inc.
    166 F.3d 1243 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Krempel v. Prairie Island Indian Community
    125 F.3d 621 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Miller v. Gammie
    335 F.3d 889 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.
    460 U.S. 1 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Nationwide Mutual Ins. Co. v. Liberatore
    408 F.3d 1158 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Parrino v. FHP, Inc.
    146 F.3d 699 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Peabody Coal Co. v. Navajo Nation
    373 F.3d 945 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

Seminole Tribe of Florida v. Florida
    517 U.S. 44 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Sharber v. Spirit Mountain Gaming, Inc.
    343 F.3d 974 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assoc., Inc.
    86 F.3d 656 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Sycuan Band of Mission Indians v. Roache
    54 F.3d 535 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Thompson v. Illinois Dept. of Professional Regulation
    300 F.3d 750 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2                                **TABLE OF AUTHORITIES**

3                                          CASES

4    Vulcan  Chemical Technologies, Inc. v. Barker
5           297 F.3d 332 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

6    Wise v. Wachovia Securities, LLC
            450 F.3d 265 (7th Cir. 2006), cert. denied 127 S.Ct. 582 (2006) . . . . . . . . . . . . . . . 8
7

8

9                                        STATUTES

10

11   8 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12   9 U.S.C. §§ 1-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13   9 U.S.C. § 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

14   25 U.S.C. § 2701 - 2721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

15   25 U.S.C. § 2710 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 11

16   28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

17   28 U.S.C. § 1362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18

19

20                                     MISCELLANEOUS

21   11 Moore's Fed. Prac. §56.10[8][a] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

22   S. Rep. No. 100-446 (1988), reprinted in 1988 U.S.C.C.A.N. 3071 . . . . . . . . . . . . . . . . 11

23

24

25

26

1

**INTRODUCTION**

2   When the Pala Band of Mission Indians ("the Pala Band") entered into a Tribal-State

3   Gaming Compact with the State of California, it promised to allow employees of its casino

4   to organize collectively without interference, to arbitrate disputes about organizing with

5   labor unions, and to permit the resulting arbitration awards to be confirmed in federal court.

6   The Pala Band now wants to break its promises.  After a casino employee was disciplined

7   for talking about the union, an arbitrator ordered the Pala Band to cease and desist from

8   discriminating against union speech.  The Pala Band baldly ignored that order a few months

9   later when it forbade employees from passing out leaflets and cake celebrating a union

10  victory.  In response, UNITE HERE International Union ("UNITE HERE") decided to

11  confirm the arbitration award.

12   The Pala Band's four arguments why this case should be dismissed are meritless.

13  This case is brought to enforce the terms of Tribal-State Gaming Compact, and the Ninth

14  Circuit holds that federal courts have jurisdiction over suits to enforce Tribal-State Gaming

15  Compacts because they are a creation of federal law.  <u>Cabazon Band of Mission Indians v.</u>

16  <u>Wilson</u>, 124 F.3d 1050 (9th Cir. 1997), <u>cert. denied</u> 524 U.S. 926 (1998).  Since there is an

17  independent basis for federal jurisdiction, Section 9 of the Federal Arbitration Act creates a

18  federal cause of action to confirm an arbitration award.  9 U.S.C. § 9.  Sovereign immunity

19  is not a defense because the Pala Band waived its sovereign immunity from suit when it

20  agreed to arbitrate disputes and to permit the resulting arbitration awards to be confirmed in

21  federal court.  <u>C&L Enterprises, Inc. v. Citizen Band of Potawatami Indian Tribe</u>, 532 U.S.

22  411 (2001).  Nor is UNITE HERE's failure to file this case in tribal court a defense.

23  UNITE HERE has exhausted its remedies in the Pala Band's court.  It attempted to file this

24  case in the Intertribal Court of Southern California but was denied access to any

25  information that would enable it to do so.

26  / / /

**Petitioner's MPAs In Opposition to Motion to Dismiss**
**Request for Rule 56(f) Continuance**          1          **Case No. 07-CV-2312 W (AJB)**

**STATEMENT OF FACTS**

In 1999, the Pala Band entered into a Tribal-State Gaming Compact with the State of California pursuant to the Indian Gaming Regulatory Act, 25 U.S.C, §§ 2701 – 2721 ("IGRA").  Section 10.7 of the Gaming Compact provides:

> Notwithstanding any other provisions of this Compact, this Compact shall be null and void if, on or before October 13, 1999, the Tribe has not provided an agreement or other procedure acceptable to the State for addressing organizational and representational rights of Class III Gaming Employees and other employees associated with the Tribe's Class III gaming enterprise, such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees at the Gaming Facility of any related facility, the only significant purpose of which is to facilitate patronage at the Gaming Facility

Petition, ¶ 6, Exh. A (pp. 4-5).  Addendum "B" to the Gaming Compact provides that the Pala Band "agrees to adopt an ordinance identical to the Model Tribal Labor Relations Ordinance attached hereto."  Petition, ¶ 6, Exh A (p.7).  On September 22, 1999, the Pala Band adopted the Model Tribal Labor Relations Ordinance ("TLRO") as required by Section 10.7 of and Addendum "B" to the Gaming Compact.  Petition, ¶ 7.

Section 13 of the TLRO provides a binding dispute resolution procedure that includes arbitration of disputes that arise under the TLRO:

> The second level of binding dispute resolution shall be a resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the parties which panel shall serve all tribes that have adopted this ordinance.  The Tribal Labor Panel shall have authority to hire staff and take other actions necessary to conduct elections, determine units, determine the scope of negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all other activities needed to fulfill its obligations under this Tribal Labor Relations Ordinance.
>
> * * *
>
> (2)  Unless either party objects, one arbitrator from the Tribal Labor Panel will render a binding decision on the dispute under the Ordinance.

Petition, ¶ 10; see also Petition, ¶ 6, Exh. A (pp. 17-18) (full text of Section 13).  In accordance with this provision, on March 16, 2007, UNITE HERE and the Pala Band held

1    an arbitration hearing to resolve a dispute that arose between them under the TLRO.

2    Section 5(1) of the TLRO provides makes it an unfair labor practice for the tribe "to

3    interfere with, restrain or coerce Eligible Employees in the exercise of their rights

4    guaranteed herein."  Petition, ¶ 6, Exh. A (p. 11).  Arbitrator Sara Adler decided that the

5    Pala Band had an ad hoc rule that "prohibited speech about the Union while not prohibiting

6    other non-work-related speech" and "[t]hat ad hoc rule constituted a ULP [unfair labor

7    practice] under the TLRO" in violation of Section 5(1).  Petition, ¶ 12, Exh. D (pp. 26-27).

8    The award orders the Pala Band "to cease and desist from enforcing any rule regarding

9    speech about the Union different from one enforced about any other non-work-related

10   speech."  Petition, ¶¶ 12-13, Exh. D (p. 27).

11          After Arbitrator Adler issued the award, the Pala Band again violated Section 5(1) of

12   the TLRO and the arbitration award by continuing to enforce rules regarding speech about

13   UNITE HERE differently from other non-work-related speech.  Petition, ¶ 15.  In June

14   2007, UNITE HERE and the Pala Band arbitrated an unrelated dispute about the indefinite

15   suspension of Catalino Morales's employment from the Pala Band's casino.  Arbitrator

16   Franklin Silver ordered that Morales be returned to work, and on October 18, 2007, Morales

17   was scheduled to return to work at the Pala Casino in accordance with Arbitrator Silver's

18   award.  Petition, ¶ 16.  On that day, Pala Casino employees distributed leaflets to their

19   fellow employees in the employee cafeteria and in an outdoor employee break area.  The

20   leaflets announced "Union Wins Catalino Morales' Job With Full Back Pay" and provided

21   excerpts from the arbitrator's opinion.  Petition, ¶ 17, Exh. E (pp. 29-30).  The Pala Band

22   prohibited employees from distributing such leaflets because the leaflets announced UNITE

23   HERE's success in winning Morales's reinstatement.  Petition, ¶ 17.  On the same day, the

24   Pala Band prohibited employees from distributing slices of a cake to fellow employees in

25   the employee cafeteria  because the cake contained a message celebrating Morales's return

26   to work.  Petition, ¶ 18.

1    The Pala Band allows Pala Casino employees to distribute leaflets that do not

2  contain a prounion message in the employee cafeteria or the outdoor employee break area,

3  and to distribute cake and other food items that do not contain a prounion message to fellow

4  employees in the employee cafeteria.  Thus, the Pala Band violated the Arbitrator Adler's

5  award by prohibiting employees from distributing leaflets and cake containing a prounion

6  message.  Petition, ¶ 19.  UNITE HERE now seeks to confirm Arbitrator Adler's award in

7  federal court.

8                                      **ARGUMENT**

9  **I.    Federal courts have subject-matter jurisdiction over suits to enforce
        Tribal-State  Gaming Compacts**

10     **A.    Tribal-State Gaming Compacts are a creation of federal statute**

11    Congress enacted IGRA "to provide a statutory basis for the operation and

12  regulation of gaming by Indian tribes."  <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44,

13  48 (1996).  IGRA establishes a comprehensive scheme for the regulation of gaming by

14  Indian tribes.  <u>Sycuan Band of Mission Indians v. Roache</u>, 54 F.3d 535, 538 (9th Cir. 1994).

15  Different types of gaming, which IGRA classifies as Class I, Class II, and Class III gaming,

16  are regulated differently.  25 U.S.C. § 2710.  Class III gaming "includes such things as slot

17  machines, casino games, banking card games, dog racing, and lotteries."  <u>Seminole Tribe</u>,

18  517 U.S. at 47.  Class III gaming is "lawful on Indian lands only if such activities are --  . . .

19  (C) conducted in conformance with a Tribal-State compact entered into by the Indian tribe

20  and the State under paragraph (3) that is in effect."  25 U.S.C. § 2710(d)(1).  IGRA also

21  governs the terms of Tribal-State Gaming Compacts:

22        Any Tribal-State compact negotiated under subparagraph (A) may include
          provisions relating to –

23
            (I) the application of the criminal and civil laws and regulations of the
24        Indian tribe or the State that are directly related to, and necessary for, the
          licensing and regulation of such activity;

25           (ii) the allocation of criminal and civil jurisdiction between the State and
26        the Indian tribe necessary for the enforcement of such laws and regulations;

(iii) the assessment by the State of such activities in such amounts as are necessary to defray the costs of regulating such activity;

(iv) taxation by the Indian tribe of such activity in amounts comparable to amounts assessed by the State for comparable activities;

(v) remedies for breach of contract;

(vi) standards for the operation of such activity and maintenance of the gaming facility, including licensing; and

(vii) any other subjects that are directly related to the operation of gaming activities.

25 U.S.C. § 2710(d)(3)(C).

In 1999, the Pala Band negotiated a Tribal-State Gaming Compact with the State of California so that it could operate a casino that offers Class III gaming.  Petition, ¶ 6.  The history of the California's negotiations in 1999 with Indian tribes in the state, including the Pala Band's active role in those negotiations, is recounted in In re Indian Gaming Related Cases, 331 F.3d 1094, 1096-1105 (9th Cir. 2003).  In those negotiations, the State demanded that tribes and labor unions agree on the terms of labor organizing protections for casino employees:

> During the negotiation of the Davis Compact [i.e. the Compact negotiated in 1999], the State did not demand that tribes adopt a specific set of legal rules governing general employment practices on tribal lands.  Instead, it demanded that tribes meet with labor unions to negotiate independently a labor ordinance addressing only organizational and representational rights and applicable only to employees at tribal casinos and related facilities.  This demand became Section 10.7 of the Davis Compact:
>
>> Notwithstanding any other provision of this Compact, this Compact shall be null and void if, on or before October 13, 1999, the Tribe has not provided an agreement or other procedure acceptable to the State for addressing the organizational and representational rights of Class III Gaming Employees and other employees associated with the Tribe's Class III gaming enterprise, such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees at the Gaming Facility or any related facility, the only significant purpose of which is to facilitate  patronage at the Gaming Facility.

Id. at 1116.  Compare Petition, ¶ 6, Exh. A (pp 4-5).  The Gaming Compact also required

1  the Indian tribes to adopt a model Tribal Labor Relations Ordinance ("TLRO"), <u>In re Indian</u>

2  <u>Gaming Related Cases</u>, 331 F.3d at 1116; which the Pala Band adopted.  Petition, ¶ 6,

3  Exh. B.  The TLRO was a valid subject of Compact negotiations because it "is 'directly

4  related to the operation of gaming activities' and thus permissible pursuant to 25 U.S.C.

5  § 2710(d)(3)(C)(vii)."  <u>In re Indian Gaming Related Cases</u>, 331 F.3d at 1116.  The tribes

6  also received ample consideration in exchange for agreeing to the TLRO:  "[T]he State

7  offered numerous concessions to the tribes in return for the Labor Relations provision

8  (including the right to exclusive operation of Las Vegas style class III gaming in

9  California)."  <u>Id.</u>

   **B.    The Ninth Circuit's <u>Cabazon</u> decision forecloses the Pala Band's argument that jurisdiction is lacking**

12      Federal question jurisdiction exists to enforce IGRA compacts.  In <u>Cabazon Band of</u>

13  <u>Mission Indians v. Wilson</u>, 124 F.3d 1050 (9th Cir. 1997), <u>cert. denied</u> 524 U.S. 926

14  (1998), the Ninth Circuit held that federal jurisdiction exists to enforce an agreement in

15  California's Compact with gaming tribes:

16          Although it is true that the federal courts do not have jurisdiction over run-of-
            the-mill contract claims brought by Indian tribes, <u>see</u> <u>Gila River Indian</u>
17          <u>Community v. Henningson, Durham & Richardson</u>, 626 F.2d 708 (9th Cir.
            1980), this claim is not based on a contract that stands independent of the
18          Compacts.  Rather, it is based on an agreement contained within the
            Compacts and entered into by the parties, during their IGRA negotiations, in
19          order to resolve a disputed question and to complete the Compacts.  The
            State's obligation to the Bands thus originates in the Compacts.  The
20          Compacts quite clearly are a creation of federal law; moreover, IGRA
            prescribes the permissible scope of the Compacts.  We conclude that the
21          Bands' claim to enforce the Compacts arises under federal law and thus we
            have jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1362.
22

23  <u>Id.</u> at 1055-56; <u>see also</u> <u>Confederated Tribes of Siletz Indians of Oregon v. State of Oregon</u>,

24  143 F.3d 481, 484-85 (9th Cir. 1998) (characterizing a gaming compact as "a direct result

25  of federal authority granted through IGRA").  The Ninth Circuit reasoned that "Congress, in

26  passing IGRA, did not create a mechanism whereby states can make empty promises to

1   Indian tribes during negotiations of Tribal-State compacts, knowing that they may repudiate

2   them with immunity whenever it serves their purpose." Cabazon, 124 F.3d at 1056. The

3   Court also cited IGRA's express authorization of compact provisions providing for breach

4   of contract remedies:

> Our conclusion is bolstered by IGRA's express authorization of a compact to provide remedies for breach of contract. 25 U.S.C. § 2710(d)(3)(C)(v). This provision invites the tribe and the state to waive their respective immunities and consent to suit in federal court. By envisioning the enforcement of a compact and any contractual obligations assumed pursuant to a compact in federal court, IGRA necessarily confers jurisdiction to the federal courts.

8   Id. at 1056.[1]

9   

10   Cabazon means that there is federal jurisdiction over this case. This is a case to

11   enforce the provisions of the Pala Band's Compact with California. The TLRO is not

12   independent of the Compact. Like the agreement in Cabazon, it is "an agreement contained

13   within the Compact[] and entered into by the parties, during their IGRA negotiations, in

14   order to resolve a disputed question and to complete the Compacts." Id. at 1055-56. It is

15   also within the "permissible scope" of compact negotiations prescribed by IGRA because

16   IGRA authorizes tribes and states to negotiate for labor relations provisions such as the

17   TLRO. In re Indian Gaming Related Cases, 331 F.3d at 1116.

18   The Pala Band claims that jurisdiction existed in Cabazon only because California

19   argued that the Compacts violated IGRA. Res. Br., at 9. That argument is flatly wrong.

20   Nothing in the Cabazon opinion even suggests that this was the basis for the Court's

21   jurisdictional holding. Moreover, the argument is illogical. In Cabazon, California asserted

22   _____

   [1] Cabazon is not the only case in which the Ninth Circuit exercised its jurisdiction to
23   interpret an IGRA Compact. In Idaho v. Shoshone-Bannock Tribes, 465 F.3d 1095 (9th Cir.
   2006), the Court reviewed a declaratory judgment interpreting an IGRA Compact. The
24   Declaratory Judgment Act, 28 U.S.C. § 2201, the statute under which that case was brought,
   does not confer jurisdiction. Nationwide Mutual Ins. Co. v. Liberatore, 408 F.3d 1158, 1161
25   (9th Cir. 2005). Tribes may not sue or be sued in diversity jurisdiction because they are not
   citizens of any state. American Vantage Cos., Inc. v. Table Mountain Rancheria, 292 F.3d
26   1091, 1092 (9th Cir. 2002). Thus, IGRA provides the only possible basis for federal
   jurisdiction.

that the Compacts were invalid as a <u>defense</u> to its breach of those Compacts.  A defense

does not create federal jurisdiction, even if the defense is based on federal law.  <u>Franchise</u>

<u>Tax Bd. v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 11-12 (1983).

> **C.    It makes no difference that UNITE HERE seeks to confirm
> an arbitration award instead of litigating the underlying
> Compact breach**

<u>Cabazon</u> stands for the proposition that there is federal jurisdiction over suits to

remedy breaches of IGRA compacts.  Arbitration, and confirmation of the resulting

arbitration award in court, is a remedy for breach of contract.  Moreover, if there is federal

jurisdiction over a breach of contract claim, then there is federal jurisdiction over claims

relating to arbitration of the breach.  This is because the Federal Arbitration Act, 9 U.S.C.

§§ 1-16, "confers federal jurisdiction in cases involving arbitration only of disputes that,

were they litigated rather than arbitrated, would be within federal jurisdiction."  <u>Wise v.</u>

<u>Wachovia Securities, LLC</u>, 450 F.3d 265, 266 (7th Cir. 2006), <u>cert. denied</u> 127 S.Ct. 582

(2006).  Thus, even if <u>Cabazon</u>'s jurisdictional rule were limited to pure breach of compact

claims, the Federal Arbitration Act, in conjunction with IGRA, would establish jurisdiction

in this case.

> **D.    <u>Peabody Coal</u> did not involve an IGRA compact.**

The Pala Band relies exclusively on <u>Peabody Coal Co. v. Navajo Nation</u>, 373 F.3d

945 (9th Cir. 2004) to argue that jurisdiction does not exist.  In that case, the Ninth Circuit

held that federal jurisdiction did not exist to confirm an arbitration settlement agreement

issued pursuant to an arbitration agreement in a mining lease with an Indian tribe.  <u>Id.</u> at

951.  The coal company argued that jurisdiction existed because its lease with the Navajo

tribe was federally approved, but the Court rejected that argument:  "Peabody's claim here

does not allege any problem with the underlying leases or their amendments. The only

contract at issue in Peabody's claim is the arbitration settlement agreement, which is not a

specialized type of contract that is subject to extensive federal regulation."  <u>Id.</u>   In contrast,

1    IGRA compacts are "subject to extensive regulation."  Even if <u>Peabody Coal</u> stands for the

2    general proposition that Interior Department approval of an Indian tribe's contract is

3    insufficient to create federal jurisdiction to enforce that contract, <u>Peabody Coal</u> still would

4    not require dismissal of this case.  IGRA compacts are not merely approved by the Interior

5    Department.  They are "quite clearly are a creation of federal law."  <u>Cabazon</u>, 124 F.3d at

6    1056.  In short, <u>Peabody Coal</u> does not control this case because <u>Peabody Coal</u> did not

7    involve an IGRA compact.[2]

8          This distinction is reinforced by the <u>Peabody Coal</u> decision.  The Court in <u>Peabody</u>

9    <u>Coal</u> made clear that its decision did not extend to contracts related to gaming.  The Court

10   did not discuss any cases involving IGRA Compacts, including <u>Cabazon</u>, and distinguished

11   <u>Gaming World Int'l Ltd. v. White Earth Band of Chippewa Indians</u>, 317 F.3d 840, 848

12   (2003), which involved a contract related to Indian gaming (but not a Tribal-State Gaming

13   Compact), "because that case does not involve the validity of coal leases."  373 F.3d at 950.

14         The Pala Band also suggests that the three-judge panel that decided <u>Peabody</u>

15   overruled <u>Cabazon</u>.  That cannot be correct.  A three-judge panel of the Ninth Circuit is

16   bound by prior decisions of other panels.  <u>Miller v. Gammie</u>, 335 F.3d 889, 899 (9th Cir.

17   2003) (en banc) (holding that in the absence of intervening Supreme Court precedent, only

18   the en banc court may overrule a decision by a three-judge panel).

19   **II.    There is a private right of action to confirm the arbitration award**

20        **A.    There is a private right of action to enforce the terms of IGRA**
                  **Compacts**

21         The two cases on which the Pala Band relies to argue that there is not a private right

22   of action – <u>Hein v. Capitan Grande Band of Diegueno Mission Indians</u>, 201 F.3d 1256 (9th

23

---

24        [2] The Court in <u>Peabody Coal</u> also noted that "the company has not alleged that either
     party is failing to comply with the award" so "[t]here is simply no need for the award to be
25   'confirmed.'"  373 F.3d at 951.  That is not true in this case.  The Pala Band has baldly
     breached the arbitration award by continuing to enforce rules regarding speech about the Union
26   differently from rules about other non-work-related speech.

Cir. 2000) and <u>Dewberry v. Kulongoski</u>, 406 F.Supp.2d 1136 (D. Or. 2005) – involved suits to enforce the statutory provisions of IGRA, not suits to enforce Tribal-State Compacts that were negotiated pursuant to IGRA. This is a critical distinction. UNITE HERE does not seek to enforce the statutory provisions of IGRA. UNITE HERE seeks to enforce a Tribal-State Compact negotiated pursuant to IGRA. If there were not a private cause of action to enforce the terms of an IGRA Compact, then the plaintiffs in <u>Cabazon</u> would not have had any cause of action. Neither <u>Hein</u> nor <u>Dewberry</u> addresses <u>Cabazon</u> at all.

The only support that the Pala Band provides that for the proposition that a private cause of action does not exist to enforce a gaming compact is one sentence in the district court opinion in <u>Dewberry</u>. That sentence is *dictum*, and possibly the result of sloppy drafting. The plaintiffs in <u>Dewberry</u> did not seek to enforce an IGRA compact; they challenged a gaming compact as violating IGRA. 406 F.Supp.2d at 1138-39. Moreover, the only case that <u>Dewberry</u> cites for this proposition is <u>Hein</u>, for which it provides the following parenthetical explanation: "finding no general private right of action to enforce IGRA." <u>Id.</u> at 1146 (emphasis added).

Allowing suits to enforce Tribal-State Compacts, but not suits to enforce IGRA, is consistent with the general scheme of IGRA. IGRA expressly authorizes the parties to negotiate over remedies for breach of contract, 25 U.S.C. § 2710(d)(3)(C)(v); and Congress intended to give the parties flexibility in negotiating compact terms: "This legislation is intended to provide a means by which tribal and State governments can realize their unique and individual governmental objectives . . . ." S. REP. NO. 100-446 (1988), <u>reprinted</u> in 1988 U.S.C.C.A.N. 3071, 3076. Allowing suits in federal court facilitates agreement between tribes and states about "remedies for breach of contract." The federal courts will likely be perceived by both tribes and states as more neutral than either tribal courts or state courts. If the federal courts were not an available venue, either the tribe or the state would

1   have to agree to be sued in the opposing party's courts.  Limiting tribes' and states' options

2   this way when negotiating Gaming Compacts would not facilitate agreement.

3   **B.      The Federal Arbitration Act creates a cause of action to confirm an arbitration award**

4          UNITE HERE also has a cause of action that arises under Section 9 of the Federal

5   Arbitration Act.  Section 9 provides:

6          If the parties in their agreement have agreed that a judgment of the court shall
          be entered upon the award made pursuant to the arbitration, and shall specify
7          the court, then at any time within one year after the award is made any party
          to the arbitration may apply to the court so specified for an order confirming
8          the award, and thereupon the court so specified must grant such an order
          unless the award is vacated.
9

10  9 U.S.C. § 9.  While Section 9 does not independently create federal question jurisdiction, it

11  does create a cause of action to confirm an arbitration award which can be brought in

12  federal court if there is an independent basis for jurisdiction.  Moses H. Cone Memorial

13  Hospital v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983); see also Kasap v. Folger

14  Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1245 (D.C. Cir. 1999) ("The Federal

15  Arbitration Act creates several federal causes of action relating to arbitration agreements.");

16  Vulcan  Chemical Technologies, Inc. v. Barker, 297 F.3d 332, 337 (4th Cir. 2002) (holding

17  that the FAA "creates a separate cause of action to vacate an arbitration award").

18  **III.    The Pala Band waived its sovereign immunity by agreeing to arbitrate disputes under the TLRO**

19  **A.      An agreement to arbitrate constitutes a waiver of sovereign immunity**

20

21          The Pala Band argues that the arbitration award may not be confirmed because it has

22  not expressly waived its sovereign immunity in federal court.  This argument is definitely

23  foreclosed by the Supreme Court's decision in C&L Enterprises, Inc. v. Citizen Band of

24  Potawatami Indian Tribe, 532 U.S. 411 (2001).

25  / / /

26

1          In <u>C&L Enterprises</u>, the Court held that a tribe's agreement to arbitrate and to court

2   enforcement of the resulting award unambiguously waives the tribe's sovereign immunity

3   from a suit:

4          [T]he Tribe agreed, by express contract, to adhere to certain dispute
           resolution procedures.  In fact, the Tribe itself tendered the contract calling
5          for those procedures.  The regime to which the Tribe subscribed includes
           entry of judgment upon an arbitration award in accordance with the
6          Oklahoma Uniform Arbitration Act.  That Act concerns arbitration in
           Oklahoma and correspondingly designates as enforcement forums "courts of
7          competent jurisdiction of Oklahoma."  C&L selected for its enforcement suit
           just such a forum.  In a case involving an arbitration clause essentially
8          indistinguishable from the one to which the Tribe and C&L agreed, the
           Seventh Circuit stated:
9
           "There is nothing ambiguous about the language of the arbitration clause.
10         The tribe agrees to submit disputes arising under the contract to arbitration,
           to be bound by the arbitration award, and to have its submission and the award
11         enforced in a court of law.  * * *  The tribal immunity waiver is implicit
           rather than explicit only if a waiver of sovereign immunity, to be deemed
12         explicit, must use the words 'sovereign immunity.'  No such case has ever
           held that."
13
           That cogent observation holds as well for the case we confront.
14

15  <u>Id.</u> at 420 (quoting <u>Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Assoc., Inc.</u>,

16
    86 F.3d 656, 659-60 (7th Cir. 1996)).  The Seventh Circuit's opinion in <u>Sokaogon Gaming</u>
17
    explains the rationale for finding a waiver in more detail:
18
           [T]he only purpose that a requirement of a clear statement [waiving sovereign
19         immunity] could serve would be the admittedly, perhaps archaically,
           paternalistic purpose of protecting the tribe against being tricked by a
20         contractor into surrendering a valuable right for insufficient consideration.
           . . . [S]upposing there is such a requirement, we must ask whether the
21         language of the arbitration clause might have hoodwinked an unsophisticated
           Indian negotiator into giving up the tribe's immunity from suit without
22         realizing he was doing so.  We think this is extremely implausible, as well as
           condescending, suggestion.  The arbitration clause could not be much clearer.
23         It says that if there is a dispute under the contract it must be submitted to
           arbitration and that the arbitrator's decision is final and is enforceable in
24         court.  No one reading this clause could doubt that the effect was to make the
           tribe suable.
25

26  86 F.3d at 660.

1     The same is true here.  In Section 13(d) of the TLRO, the Pala Band agreed

2  unambiguously that it would submit disputes under the TLRO to arbitration and that

3  arbitration awards may be confirmed in federal court:

4          Under the third level of binding dispute resolution, either party may seek a
           motion to compel arbitration or a motion to confirm an arbitration award in
5          Tribal Court, which may be appealed to federal court.  If the Tribal Court
           does not render its decision within 90 days, or in the event there is no Tribal
6          Court, the matter may proceed directly to federal court.

7  Petition, ¶ 6, Exh. A (p. 18).  No one reading this provision could fail to understand that the

8  Pala Band could be sued in federal court.[3]

9     The Pala Band argues that the next sentence of Section 13(d) shows that it did not

10  intend to waive its immunity in federal court, because it expressly waived its immunity in

11  state court.  But this sentence undermines the Pala Band's sovereign immunity defense

12  because it uses the magic words "sovereign immunity":  "In the event the federal court

13  declines jurisdiction, the tribe agrees to a limited waiver of its sovereign immunity for the

14  sole purpose of compelling arbitration or confirming an arbitration award issued pursuant to

15  the Ordinance in the appropriate state superior court."  This sentence provides further

16  evidence that the Pala Band knew when it agreed to the TLRO that it was waiving its

17  sovereign immunity.  The Pala Band was not hoodwinked.

18     **B.     UNITE HERE can enforce the TLRO**

19     The Pala Band also argues that only the State of California can enforce the TLRO.

20  That argument lacks merit.  The TLRO's dispute resolution procedures refer to "parties."

21  Section 13(b) states that "[t]he parties agree to pursue in good faith the expeditious

22  resolution of these matters within strict time limits."  Section 13(c), which sets out the

23  arbitration procedure, permits "the parties" to select arbitrators.  Section 13(d) states that

24

25  _____

26     [3] The issue whether UNITE HERE satisfied Section 13(d)'s provision regarding the
    tribal court is addressed in the next section of this brief.

1    "either party may seek a motion to compel arbitration or a motion to confirm an arbitration

2    award."  Petition, ¶ 6, Exh. A (p. 17-18).  The rest of the TLRO makes clear that the term

3    "parties" means unions and tribes.  The TLRO repeatedly refers to unions, but does not

4    refer to the State of California at all.  In addition, Sections 10(d) and 11(e) provide that

5    "[t]he tribe or the union may appeal any decision rendered after the date of the election by

6    the election officer to a three (3) member panel of the Tribal Labor Panel mutually chosen

7    by both parties."  Petition, ¶ 6, Exh. A (pp. 15-16).  These provisions would not make sense

8    if "parties" referred only to the State and the Pala Band.[4]

9         The history of dispute resolution under the TLRO also demonstrates that UNITE

10   HERE may enforce the TLRO through arbitration and confirmation of the resulting awards.

11   There have been five arbitration proceedings under the TLRO's dispute resolution

12   provisions with four different Indian tribes, including the Pala Band.  Each dispute was

13   submitted to arbitration by the Petitioner in this case, UNITE HERE International Union

14   (formerly known as Hotel Employees and Restaurant Employees International Union).

15   Petition, ¶ 12, Exh. D; Martin Decl., ¶ 9, Exh. C-F (pp. 12-56).  None of the tribes have

16   ever asserted in the arbitration proceedings that only the State of California could use the

17   TLRO's dispute resolution provisions to challenge an Indian tribe's breach of the TLRO.

18   Martin Decl., ¶ 9.

19        The Pala Band also points to Section 9 of the Gaming Compact, which creates

20   establishes a separate arbitration procedure for disputes under other provisions of the

21   Compact and states that no one other the Pala Band or the State can invoke these

22   procedures.  But "[s]pecific terms of a contract govern inconsistent, more general terms."

23   Shoshone-Bannock Tribes, 465 F.3d at 1099 (applying contract law principles to interpret

24

25   _____

26   [4] Extrinsic evidence would likely provide additional evidence that it was intended that
     unions, rather than the State, would enforce the TLRO's provisions.  Martin Decl., ¶ 11.

**Petitioner's MPAs In Opposition to Motion to Dismiss**
**Request for Rule 56(f) Continuance**          14          **Case No. 07-CV-2312 W (AJB)**

an IGRA compact).  Section 9 does not apply to the TLRO because the TLRO contains its own dispute resolution procedure.

## IV.    UNITE HERE exhausted existing tribal court remedies

Section 13(d) of the Gaming Compact's TLRO provides that "[u]nder the third level of binding dispute resolution, either party may seek a motion to compel arbitration or a motion to confirm an arbitration award in Tribal Court, which may be appealed to federal court.  If the Tribal Court does not render its decision within 90 days, or in the event there is no Tribal Court, the matter may proceed directly to federal court."  Petition, ¶ 20.  The Pala Band contends that Section 13(d) means that this case should have been brought first in the Intertribal Court of Southern California.  UNITE HERE attempted to file this case in the Intertribal Court but was denied access to that forum.[5]

### A.    It was impossible for UNITE HERE to file this case in the Intertribal Court of Southern California

The Intertribal Court does not make information available to the public about how to file a case in its court, such as what form pleadings must take, where the papers must be filed, the filing fee, rules about service, bar admission rules, or any other the rules of practice or procedure.  UNITE HERE's counsel contacted the Intertribal Court to try to obtain this information.  She was told that the Intertribal Court performs centralized administrative functions for each member tribe, but said that each tribe has its own court; that the Pala Band does not make its rules about practicing and procedure in its court available to the public; and that the Pala Band's court is a court of limited jurisdiction, but that statements of the court's jurisdiction is not available to the public.  Martin Decl., ¶¶ 3-6.  The only information that the Intertribal Court provided was a "Tribal Court Intake

---

[5] UNITE HERE did not allege, as the Pala Band asserts, that "the Pala Tribe is not a member of a Tribal Court."  Res. Br., at 14.  Rather, UNITE HERE alleged that "[t]he Union brings this motion to confirm the Arbitration Award directly in this Court because the Pala Band does not have a court in which the Union may file this motion."  Petition, ¶ 21 (emphasis added).  This is a more precise allegation to which the Pala Band has not responded.

Petitioner's MPAs In Opposition to Motion to Dismiss
Request for Rule 56(f) Continuance            15            Case No. 07-CV-2312 W (AJB)

1    Review Form" which advised the recipient to consult an attorney.  Martin Decl., ¶ 6 (p. 8).

2    UNITE HERE was effectively denied access to the Intertribal Court.

3         The Pala Band may argue in its reply brief that UNITE HERE should have

4    completed the Tribal Court Intake Review Form and waited for a response.  However, filing

5    out this form is not the same as filing a case.  The form itself makes clear that the response

6    "is not meant to be a determination of your case or controversy nor is it a court order."

7    Martin Decl., ¶ 6, Exh. A (p. 8).  Moreover, the TLRO does not allow the Pala Band to

8    delay confirmation of an award by requiring UNITE HERE to take steps in advance of

9    filing.  The TLRO requires speedy resolution of disputes.  Section 13(d) gives the Tribal

10    Court only ninety days to render a decision.  This strict time-limit would become

11    meaningless if the Pala Band were able to require UNITE HERE to file nonbinding intake

12    forms before filing a case.

13         **B.    Exhaustion of tribal remedies is not required in a non-functioning
                tribal court**

14         UNITE HERE's position here finds support in the exhaustion of tribal remedies

15    doctrine.  Under that doctrine, exhaustion is not required if there is not a functioning tribal

16    court system at the time the federal case is filed.  Johnson v. Gila River Indian Community,

17    174 F.3d 1032, 1036 (9th Cir. 1999) ("[I]f a functioning appellate court does not exist,

18    exhaustion is per se futile."); Krempel v. Prairie Island Indian Community, 125 F.3d 621,

19    622 (8th Cir. 1997) ("[I]f there is no functioning tribal court, exhaustion would be futile and

20    therefore would not be required.") It is not enough that the tribe asserts that it has a court or

21    even produces documents proving the existence of a court.  A function court is one that

22    follows established rules of court and responds to inquiries.  Johnson, 174 F.3d at 1036.  In

23    that case, the plaintiff filed suit in federal court four months after he began sending papers

24    to and requesting information from the tribal court.  The district court dismissed the case for

25    failure to exhaust tribal remedies, but the Ninth Circuit reversed:  "[T]he lack of a briefing

26    schedule, scheduled appellate argument, a meaningful response to the notice of appeal, or

1    any answer to any of [the plaintiff's] correspondence for an abnormally extensive period of

2    time [four months] create doubt that a functioning appellate court exists."  Id.

3        The facts here create even more doubt that the Pala Band had established a

4    functioning court.  While the plaintiff in Johnson was able to file an appeal, UNITE HERE

5    was informed that the Intertribal Court is not really a court, that the Pala Band's court has

6    limited jurisdiction, and that there are no public rules about how to proceed in that court or

7    the scope of its jurisdiction.  Martin Decl., ¶¶ 3-6.

8        The evidence that the Pala Band submitted with its motion to dismiss only adds to

9    the doubt.  The Pala Band filed a document entitled "Intertribal Court of Southern

10   California – Governing Agreement (Adopted 2006)," Res. Exh. 2 (p. 7); but there is no

11   evidence that the Pala Band adopted this document.  The Pala Band's counsel previously

12   asserted in correspondence that a signature page (which is Respondent's Exhibit 5) is

13   evidence that the Pala Band approved the 2006 Governing Agreement.  Martin Decl., ¶ 10,

14   Exh. G (p. 58) ("2.  Intertribal Court of Southern California Governing Agreement; 3.

15   Approval of the Governing Agreement referenced in Item 2.")  That cannot be true because

16   the Governing Agreement is dated 2006 and the signature page is dated January 2005.  The

17   Pala Band also asserts that "[t]he ICSC will assert jurisdiction over a petition to confirm an

18   arbitration award issued following an arbitration involving the TLRO if it is asked to do

19   so." Res. Br., at 13.  The Pala Band cites no support for this assertion.  Presumably, the Pala

20   Band's counsel does not have authority to decide in litigation what decisions would be

21   made by its court, if a court were functioning.   Exhaustion is not required in a tribal court

22   that is not properly established or that does not have the power to grant relief.  Comstock

23   Oil & Gas Inc. v. Alabama & Coushatta Indian Tribes of Texas, 261 F.3d 567, 572 (5th Cir.

24   2001) (holding that there is no duty to exhaust remedies before a tribal court that is not

25   properly established by tribal government); Howlett v. Salish & Kootenai Tribes, 529 F.2d

26   233, 240 (9th Cir. 1976) (holding that exhaustion before tribal court would be futile because

tribal court judge told plaintiff's council that he did not believe the tribal court had the power to grant plaintiffs the relief sought).

**V.    If the Court does not deny the Pala Band's motion to dismiss, the motion should be converted to a Rule 56 motion for summary judgment and continued to allow UNITE HERE to conduct discovery**

The Pala Band's Rule 12(b)(6) motion relies on evidence about the Intertribal Court that the Pala Band filed with its motion.  "Where a defendant attaches extrinsic evidence to a Rule 12(b)(6) motion, the court ordinarily must convert that motion convert that motion into one for summary judgment under Rule 56 to give the plaintiff an opportunity to respond."  Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998).  If the Court does not deny the Pala Band's motion to dismiss, UNITE HERE requests a Rule 56(f) continuance to conduct discovery.

There is a limited exception to this conversion to summary judgment rule where "an attached document is integral to the plaintiff's claims and its authenticity is not disputed because the plaintiff obviously is on notice of the contents of the document."  Id.  That exception does not apply here.  UNITE HERE alleged in the Petition that "the Pala Band does not have a court in which the Union may file this motion."  Petition, ¶ 21 (emphasis added).  The evidence filed in support of the Pala Band's motion is not integral to UNITE HERE's allegation about its access to the tribal court.  The mere existence of the Intertribal Court does not prove that UNITE HERE could have filed its petition in the Intertribal Court.  The reason that UNITE HERE could not file its petition in the Intertribal Court is because the Intertribal Court's administrator told UNITE HERE's counsel that she could not do so and refused to provide any information about the court's procedures that would enable her to do so.  Moreover, UNITE HERE was not on notice of these documents when

1   it filed the Petition in December 2007.  A representative of the Intertribal Court told that

2   Pala Band that these documents were not available to the public.  Martin Decl., ¶¶3-6.[6]

3          Rule 56(f) authorizes a district court to deny a summary judgment motion and order

4   a continuance to permit discovery if a party opposing a summary judgment motion cannot

5   "present by affidavit facts essential to justify the party's opposition."  FED. R. CIV. P. 56(f).

6   Rule 56(f) motions are generally favored and liberally granted.  See 11 Moore's Fed.

7   Prac.§ 56.10[8][a].  Here, the Pala Band's motion for summary judgment is premature

8   because UNITE HERE has not had the opportunity to develop evidence to controvert

9   assertions made by the Pala Band about its court system.  This evidence is within the Pala

10  Band's control.  UNITE HERE should be given the opportunity to develop extrinsic

11  evidence about whether the Pala Tribe had a functioning court in December 2006 when this

12  case was filed.  Martin Decl., ¶ 11.

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  
_____

23       [6] The Pala Band cites Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d
     750, 754 (7th Cir. 2002) for the proposition that "[w]hen a written instrument contradicts
24   allegations in the complaint, 'the exhibit trumps the allegations.'"  Res. Br., at 6 (quoting
     Thompson, 300 F.3d at 754).  That is not what Thompson says and the Pala Band's brief leaves
25   out a key phrase.  What Thompson says is "that when a written instrument contradicts
     allegations in the complaint to which it is attached, the exhibit trumps the allegations."  300
26   F.3d at 754 (emphasis added).

1

**CONCLUSION**

2       For all of the foregoing reasons, Respondent's motion to dismiss should be denied,

3   or, in the alternative, a Rule 56(f) continuance granted.  If, however, the Court believes that

4   this case should be filed first in the Intertribal Court, then proceedings should be stayed

5   while Petitioner does so.  Sharber v. Spirit Mountain Gaming, Inc., 343 F.3d 974, 976 (9th

6   Cir. 2003) (staying proceedings in district court while tribal remedies are exhausted).

7

8   DATED:  May 5, 2008             Respectfully submitted,

9                                   DAVIS, COWELL & BOWE, LLP

10
                                    By: _____
11
                                          KRISTIN L. MARTIN
12
                                    595 Market Street, Suite 1400
13                                  San Francisco, California 94105
                                    Email: klm@dcbsf.com
14                                  Phone:  (415) 597-7200
                                    Facsimile:  (415) 597-7201
15

16

17

18

19   50/C:\DCB\KLM\PALA Opp to Mot to Dismiss P&A.wpd
     5/2/2008/10:15:27 UNITE 5415
20

21

22

23

24

25

26

**Petitioner's MPAs In Opposition to Motion to Dismiss**
**Request for Rule 56(f) Continuance**          20          **Case No. 07-CV-2312 W (AJB)**

CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY AND CITY OF SAN FRANCISCO

On May 5, 2008, I caused to be served the foregoing:

1)    PETITIONER UNITE HERE INTERNATIONAL UNION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S MOTION TO DISMISS; REQUEST FOR RULE 56(f) CONTINUANCE and

2)    DECLARATION OF KRISTIN L. MARTIN IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS

true and correct copies addressed as follows:

Theodore R.Scott
Littler Mendelson
501 West Broadway, Suite 900
San Diego, California 92101-3577

Respondent

[ x ]    (BY MAIL) I am "readily familiar" with the firm's practice for collection and processing correspondence for mailing.  Under that practice, I deposited in a box or other facility regularly maintained by UNITED STATES POSTAL SERVICE, first-class postage fully prepaid thereon.

[X   ]    (BY ECF FILING) The undersigned hereby certifies that true and correct copies of the following document(s) were served electronically through the Southern District of California (San Diego) ECF system on May 5, 2008.

[  ]    (BY OVERNIGHT DELIVERY) I caused said envelope(s) to be delivered overnight via an overnight delivery service in lieu of delivery by mail to the addressee(s).

[  ]    (BY FAX) At _____m., I transmitted, pursuant to Rules 2001 et. seq., the above-described document by facsimile machine (which complied with Rule 2003(3)), to the above-listed fax number(s).  The transmission originated from facsimile phone number (415) 597-7201 and was reported as complete and without error.  The facsimile machine properly issued a transmission report, a copy of which is attached hereto.

Executed on May 5, 2008, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Reiko Ross