FILED

08 MAY 22 PM 3: 53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: *(illegible)*

DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE International Union,<br><br>                         Petitioner,<br><br>          vs.<br><br>PALA BAND OF MISSION INDIANS,<br><br>                         Respondent. | CASE NO. 07-CV-2312 W (AJB)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. No. 4)** |

On December 11, 2007 Petitioner Unite Here ("Petitioner" or "Unite Here") filed this petition to confirm an arbitration award against Respondent Pala Band of Mission Indians ("Respondent" or "Pala Band"). (Doc. No. 1.) On April 4, 2008 Respondent moved to dismiss the petition for lack of subject matter jurisdiction. (Doc. No. 4.) The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Respondent's motion and **DISMISSES** Petitioner's petition. (Doc. No. 4.)

///
///
///
///
///
///

07cv2312W

I. <u>BACKGROUND</u>

    A.    <u>The Parties</u>

Petitioner Unite Here is an international labor union with an office in San Diego County. (*Pet.* ¶ 4.)  Respondent Pala Band of Mission Indians is an Indian tribe whose reservation is located in San Diego County.  (*Id.* ¶ 5.)  The Pala Band owns and operates a casino known as the Pala Casino Spa and Resort ("Casino"), which is also located in San Diego County.  (*Id.*)  Many Casino workers belong to the Unite Here labor union.

    B.    <u>A Brief Legal Backdrop of Indian Gaming, The Pala Band, and Labor Dispute Resolution</u>

In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA").  25 U.S.C. §§ 2701 *et. seq.*  The IGRA provides a statutory basis for the operation of tribal gaming as a means of promoting tribal economic development, self-sufficiency, and strong tribal government.  25 U.S.C. §§ 2701(1), (2).  The Act is an example of "cooperative federalism," in that it seeks to balance the competing sovereign interests of the federal government, state governments, and Indian tribes by giving each a role in the regulatory scheme.  <u>Artichoke Joe's v. Norton</u>, 216 F. Supp. 2d 1084, 1092 (E.D.Cal. 2002).

IGRA created three tribal gaming classes, each subject to a different level of regulation.  <u>In re Indian Gaming Related Cases</u>, 331 F.3d 1094, 1096–97 (9th Cir. 2003).  Class III gaming, or the type of high-stakes gaming usually associated with Nevada-style gambling, is subject to a greater degree of federal and state regulation than either class I or class II gaming (<u>e.g.</u> bingo, etc.).  <u>Id.</u> at 1097.  Under the IGRA, in order for a tribe (like the Pala Band) to conduct class III gaming, the gaming must be conducted in conformance with a Tribal-State Gaming Compact entered into by the Indian tribe and the State and approved by the Secretary of the Interior.  25 U.S.C. § 2710(d).

1    In 1999, the Pala Band, wanting to conduct class III gaming on tribal land,

2 entered into a Tribal-State Gaming Compact (the "Gaming Compact") with the state

3 of California, which was ultimately approved by the Secretary of the Interior. (*Pet.* ¶

4 6, 8.) The State, however, agreed to the Compact on the condition that the Pala Band

5 tolerate some measure of labor relations for Casino employees. (*Pet.* Ex. A, § 10.7

6 [hereinafter "*Gaming Compact*"].) Specifically, Section 10.7 of the Gaming Compact

7 required the Pala Band to:

8    [P]rovide[] an agreement or other procedure acceptable to the [state of
     California] for addressing organizational and representational rights of
9    Class III Gaming Employees and other employees associated with the
     Tribe's Class III gaming enterprise, such as food and beverage,
10   housekeeping, cleaning, bell and door services, and laundry employees at
     the [Casino], the only significant purpose of which is facilitate patronage
11   at the [Casino].
12

13 (*Gaming Compact*, § 10.7.)

14    On September 22, 1999, in order to satisfy Gaming Compact Section 10.7, the

15 Pala Band adopted the Model Tribal Labor Relations Ordinance ("TLRO"). (*Pet.* ¶ 7.)

16 Among other things, the TLRO defined unfair labor practices, guaranteed eligible

17 Casino employees the right to collectively bargain, and outlined a three-level binding

18 dispute resolution procedure, which included arbitration. (See generally *Pet.* Ex. A at

19 10–18 [hereinafter "*TLRO*"].)[1]

20    Under the TLRO, when a labor dispute arises the aggrieved party must first

21 present his grievance to a designated tribal forum. (*TLRO* § 13(b).) The second level

22 of dispute resolution involves the Tribal Labor Panel, comprised of ten arbitrators

23 mutually appointed by the parties. (*TLRO* § 13(c).) Depending on whether a party

24

25

26    [1]The TLRO adopted by the Pala Band appears to be a straightforward ordinance
modeled after labor ordinances enacted by many other gaming tribes. Courts have found that
these ordinances are validly enacted to satisfy Gaming Compacts, and find that "[t]he TLRO
27 provides only modest organizing rights to tribal gaming employees and contains several
provisions protective of tribal sovereignty." See In re: Indian Gaming Related Cases, 331 F.3d
28 1094, 1116–1117 (9th Cir. 2003) (discussing and approving of near-identical TLRO under
near-identical Gaming Compact).

07cv2312W

1    objects, either one or three arbitrators hear the grievance and render a binding, written

2    decision. (*TLRO* § 13(c).)

3        Under the third level of binding dispute resolution:

4        [E]ither party may seek a motion to compel arbitration or a motion to
         confirm an arbitration award in Tribal Court, which may be appealed to
5        federal court. If the Tribal Court does not render its decision within 90
         days, or in the event there is no Tribal Court, the matter may proceed
6        directly to federal court.  In the event the federal court declines
7        jurisdiction, the [Pala Band] agrees to a limited waiver of its sovereign
         immunity for the sole purpose of compelling arbitration or confirming an
8        arbitration award issued pursuant to the [TLRO[ in the appropriate state
9        superior court.

10   (*TLRO* § 13(d).)

11

12       **C.    The Parties' Dispute and the Arbitration Award**

13       In February and March 2006, the Pala Band received reports that Hilario Cubias

14   ("Cubias"), a Casino employee and Unite Here union member, was interfering with

15   other employees' work by trying to get them more involved with labor union activities.

16   (*Pet.* Ex. D. at 23 [hereinafter "*Arbitration Opinion*"].)  A Casino supervisor told Cubias

17   that he could not discuss union issues on work time, though other types of non-work-

18   related speech were tolerated. (*Id.* at 25.) Unite Here objected to the double standard.

19       On March 16, 2007 Unite Here and Pala Band invoked the TLRO's second level

20   of dispute resolution and held a hearing before Arbitrator Sara Adler ("Adler"). (*Pet.*

21   ¶ 12.) On August 30, 2007 Adler issued a binding decision ("Decision"), finding that

22   the Pala Band committed an unfair labor practice by violating a TLRO clause

23   protecting the right to unionise.[2] (*Arbitration Opinion* 27.)  Adler's Decision also held

24   that "[the Pala Band] is ordered to cease and desist from enforcing any rule regarding

25

26   _____
     [2]Section 4 of the TLRO states that:
27   Eligible Employees shall have the right to self-organization, to form, to join, or
     assist employee organizations, to bargain collectively through representatives of
28   their own choosing, to engage in other concerted activities for the purpose of
     collective bargaining or other mutual aid or protection, and shall have the right
     to refrain from any or all such activities.

1  speech about [Unite Here] different from one enforced about any other non-work-
2  related speech." (*Arbitration Opinion* 27.)

3      In June 2007, Unite Here and Pala Band arbitrated an unrelated dispute
4  concerning recently-suspended Casino employee Catalino Morales ("Morales"). (*Pet.*
5  ¶ 16.) On September 20, 2007 Arbitrator Franklin Silver issued an award favorable to
6  Unite Here that ordered Morales be returned to work with full back pay. (*Id.*)

7      On October 18, 2007, the day Morales was scheduled to return to work, Casino
8  employees distributed leaflets celebrating Unite Here's victory and Morales' impending
9  return. (*Pet.* ¶ 17; Ex. E.)  The leaflets also invited Casino workers to consult with
10  Unite Here if they felt pressured or unfairly disciplined at work. (*Id.*)  The same day,
11  Casino employees planned to distribute slices of cake containing similar messages. (*Pet.*
12  ¶ 18.)

13      Unfortunately, Pala Band agents allegedly stopped and prohibited Casino
14  employees from distributing the leaflets and cake because they contained pro-union
15  messages. (*Id.* ¶¶ 17, 18.)  Because the Pala Band does not prohibit Casino employees
16  from distributing leaflets or cake that do not contain pro-union messages, Unite Here
17  believes that the events of October 18, 2008 violated Adler's August 30, 2007
18  arbitration Decision. (*Id.* ¶ 19.)

19      On December 11, 2007 Petitioner Unite Here invoked the TLRO's third level
20  of binding dispute resolution by filing a petition in this Court to confirm Arbitrator
21  Adler's December 30, 2007 Arbitration Decision against Respondent Pala Band of
22  Mission Indians. (Doc. No. 1.)  On April 4, 2008 Pala Band moved to dismiss the
23  Petition for lack of subject matter jurisdiction. (Doc. No. 4.)  On May 5, 2008 Unite
24  Here opposed Pala Band's motion. (Doc. No. 8.)  On May 12, 2008 Pala Band filed its
25  Reply brief. (Doc. No. 9.)
26  ///
27  ///
28  ///

07cv2312W

## II.   LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter[.]" Fed. R. Civ. P. 12(b)(1). Although the defendant is the moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. Therefore, the plaintiff bears the burden of proof on the necessary jurisdictional facts. McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (citing Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)); see also Marriot Intern., Inc. v. Mitsui Trust & Banking Co., Ltd., 13 F. Supp. 2d 1059, 1061 (9th. Cir. 1998).

Jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1);see also Snell v. Cleveland, 316 F.3d 822, 826 (9th Cir. 2002). In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See Thornhill, 594 F.2d at 733. In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

///
///
///
///
///
///

1    III.    DISCUSSION

2            A.    **The Court Lacks Subject Matter Jurisdiction Because Confirming**
3                  **the Arbitration Award Does Not Require Resolution of a Substantial**
4                  **Question of Federal Law**

5            Respondent argues that subject matter jurisdiction does not exist because
6    confirming the arbitration award does not require resolving a substantial question of
7    federal law. (*Resp.'s Mot.* 6–9.) Even if the IGRA provided some sort of jurisdictional
8    basis, Respondent contends, no private right of action exists allowing Unite Here to
9    bring suit, and in any event the Pala Band has not waived its sovereign immunity from
10   suit in this forum. (*Id.* 9–13.)

11           Petitioner, in response, frames its petition as an action to enforce a breach of the
12   Gaming Compact, and argues that jurisdiction exists under Cabazon Band of Mission
13   Indians v. Wilson, 124 F.3d 1050 (9th Cir. 1997). (*Pet.'s Opp'n* 6–8.) Petitioner
14   contends that a private right of action must exist to enforce the Gaming Compact,
15   otherwise the Cabazon plaintiffs would not have had a cause of action. (*Id.* 9–11.)

16

17                  *i.    Under Cabazon, Federal Question Jurisdiction Exists For*
18                  *Signatories To Enforce Tribal-State Gaming Compacts*

19           The Petition anchors federal jurisdiction on 28 U.S.C. § 1331 and Cabazon, 124
20   F.3d at 1056. (*Pet.* ¶ 2.) Section 1331 grants district courts jurisdiction over "all civil
21   actions arising under the Constitution, laws, or treaties of the United States." 28
22   U.S.C. § 1331. For a case to "arise under" federal law, a plaintiff's complaint must
23   establish "either that federal law creates the cause of action or that Plaintiff's right to
24   relief necessarily depends on resolution of a substantial question of federal law."
25   Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1,
26   27–28 (1983). The fact that a defendant is a tribal sovereign is not, by itself, sufficient
27   to raise a federal question. Gila River Indian Cmty. v. Henningson, Durham &
28   Richardson, 626 F.2d 708, 714 (9th Cir. 1980).

1   Federal question jurisdiction exists for signatories to enforce Gaming Compacts
2   under the IGRA. Cabazon, 124 F.3d at 1050. In Cabazon, plaintiff Indian tribes
3   compacted with defendant State of California to offer off-track horse race wagering on
4   tribal land. Id. at 1053. When the parties signed the gaming compacts, it was unsettled
5   whether federal law required California to pay over to the tribes license fees collected
6   from racing associations for bets made on tribal land. Id. Per the compact's terms, the
7   State and tribe agreed to submit to a federal district court whether the fees were
8   permissible under the IGRA. Id.
9   The compact itself contained a contingency, depending on what the district court
10  held. Id. at 1054. If the license fees were permissible, California would retain and
11  collect all fees, including those collected on tribal land. Id. If, however, the fees were
12  impermissible, the tribe was entitled to all fees previously collected as well as future
13  credits. Id.
14  Ultimately, the Ninth Circuit found the fees impermissible because the IGRA
15  preempted California from taxing off-track betting on tribal land. Id. (citing Cabazon
16  Band of Mission Indians v. Wilson, 37 F.3d 430, 435 (9th Cir. 1994) ("Cabazon II")).
17  Despite the ruling, California refused to pay over the fees and declared the gaming
18  compacts invalid. Cabazon, 124 F.3d at 1054.
19  The tribes then sued the State of California to enforce the gaming compact's
20  contingency and collect past and future fees. Id. California moved to dismiss, arguing
21  that the gaming compacts were purely contractual in nature and beyond federal
22  question jurisdiction. Id. at 1055. The Ninth Circuit disagreed. Id. at 1055–56.
23  Cabazon held that although federal courts did not have jurisdiction over "run-of-the-
24  mill" contract claims, the tribes' claim was not based on a contract that stood
25  independent of the gaming compact. Id. Because the contingency agreement was
26  actually contained within the gaming compact, and the gaming compacts were "quite
27  literally" a creation of federal law, federal jurisdiction existed in order for the tribes to
28  enforce the gaming compact's terms. Id. at 1056. The presence of a neutral federal

1  forum to resolve the dispute was important: "Congress... did not create a mechanism
2  whereby states can make empty promises to Indian tribes during good faith [compact
3  negotiations], knowing that they may repudiate them with immunity whenever it serves
4  their purpose." Cabazon, 124 F.3d at 1056.
5
6          ii.      Under Peabody Coal, Enforcing an Arbitration Award Does Not
7                   Raise a Substantial Question of Federal Law
8          In cases where a tribal sovereign has not tried to assert authority over a non-
9  tribal party, and where the validity of a federally regulated contract is not at issue,
10 courts have not found a substantial federal question to be present. See Peabody Coal
11 Co. v. Navajo Nation, 373 F.3d 945, 951 (9th Cir. 2004) (collecting cases). In Peabody
12 Coal, plaintiff coal company and defendant Indian tribe litigated against the backdrop
13 of the Indian Mineral Leasing Act ("IMLA"), 25 U.S.C. §§ 396a et. seq., which required
14 the Secretary of the Interior ("Secretary") to approve all mineral leases between
15 commercial companies and Indian tribes. Peabody Coal, 373 F.3d at 946. The original
16 lease between the coal company and tribe authorized the Secretary to readjust royalty
17 rates at specific time intervals. Id. The parties eventually agreed to amend the original
18 lease, and the provision allowing the Secretary to readjust rates was replaced by an
19 arbitration clause as the "sole and exclusive method" for adjusting royalties. Id. at 947.[3]
20 The Secretary of the Interior approved the amended lease. Id.
21         Some years later, the coal company and the tribe reached an impasse in
22 negotiating royalty rates and convened an arbitration panel. Id. Although the parties
23 eventually negotiated a settlement, the settlement's terms were memorialized in a "final
24
25 _____
         [3]Like the instant case, the tribe in Peabody Coal also agreed to waive its sovereign
26 immunity from actions to enforce or appeal any resulting arbitration decision, and consented
   to suit in the United States District Court for the District of Arizona for the limited purpose
27 of enforcing or appealing the arbitration decision. Peabody Coal, 373 F.3d at 947. Of course,
   merely because the litigants consent to suit in federal court does not provide an independent
28 basis of federal subject matter jurisdiction. See, e.g., Morongo Band of Indians v. California
   State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988) ("The parties have no power
   to confer jurisdiction on the district court by agreement or consent.")

07cv2312W

1 arbitration award." <u>Id.</u> In addition, the parties again amended the mineral lease in

2 conjunction with the award, which was duly approved by the Secretary. <u>Peabody Coal</u>,

3 373 F.3d at 947.

4     For various reasons, disagreements arose and the coal company filed suit in

5 federal court seeking to enforce the final arbitration award. <u>Id.</u> at 949. Although the

6 coal company did not seek to enforce the underlying leases or amendments, the

7 company premised federal jurisdiction on the Secretary's prior lease approval and the

8 "general federal regulatory scheme governing mineral leases." <u>Id.</u>

9     The <u>Peabody Coal</u> court found it lacked federal subject matter jurisdiction to

10 enforce the parties' arbitration agreement because the coal company's complaint did

11 not allege that the tribe was currently in breach of any lease provision or amendment.

12 <u>Id.</u> at 950. Despite the presence of a federally-approved lease, the coal company sought

13 to enforce an arbitration award that was *not* federally approved. <u>See id.</u> (noting that the

14 parties agreed that no action of the Secretary was necessary to effectuate the arbitration

15 award). The court found that the only contract at issue was the arbitration award,

16 which was not a specialized type of contract subject to extensive federal regulation. <u>Id.</u>

17 at 951.[4] Rather:

18     Whether the [tribe] is somehow in breach of this award is an issue that

19 can be resolved by the common law of contracts. Federal approval of the underlying leases or amendments has no material bearing on whether this

20 award requires confirmation or enforcement. Therefore, [the coal

21 company's] complaint does not present a federal question.

22 <u>Id.</u> at 951–52.

23 ///

24 ///

25 ///

26

27 [4]Additionally, the <u>Peabody Coal</u> court did not decide the question of whether the existence of a federal question in an arbitrated dispute would confer federal subject matter

28 jurisdiction to confirm or enforce the resulting arbitration award pursuant to 9 U.S.C. § 9. <u>See</u> <u>Peabody Coal</u>, 373 F.3d at 952 n.5. That issue is not implicated in this case because Unite Here's arbitration award is premised on violations of the TLRO, and not on federal law.

1           **iii.**      ***Like* Peabody Coal, *Confirming the Arbitration Award Does Not***

2                      ***Present a Federal Question***

3      As a threshold issue, Unite Here is not bringing a cause of action created by the

4 IGRA or other federal law. See Gen. Atomic Co. v. United Nuclear Corp., 655 F.2d

5 968, 969 (9th Cir. 1981) (holding that 9 U.S.C. § 9 does not create federal question

6 jurisdiction in an action to confirm an arbitration award). Rather, Unite Here—a

7 private party—merely wants to enforce an arbitration award in federal court: there is

8 no State-Tribal dispute concerning any provision of the IGRA or the Gaming Compact.

9 Thus, this case is less like Cabazon's compact dispute and more like Peabody Coal's

10 arbitration enforcement. And although Peabody Coal distanced itself from gaming

11 compact case law, Unite Here has not argued *why* Peabody Coal's four-square principles

12 should not apply. See Peabody Coal, 373 F.3d at 950 n. 3 (finding persuasive authority

13 involving gaming compact irrelevant because it did not involve validity of a coal lease).

14      Unite Here is undoubtedly correct when it argues that the gaming compacts are

15 a product of federal law, and that the TLRO was a valid subject of Compact

16 negotiations. (*Pet.'s Opp'n* 4–6.) Unlike the Cabazon dispute, however, private

17 enforcement of a TLRO arbitration award is farther removed from applying federal law

18 to a State-Tribal dispute involving an explicit IGRA provision or Gaming Compact

19 contingency. Because neither the IGRA nor Cabazon expressly confer federal

20 jurisdiction for this type of action, the Court is mindful of "[becoming] the arbiter of

21 any and all disputes that may arise out of [gaming compacts]." Cabazon, 124 F.3d at

22 1064 (Wiggins, J., dissenting). In short, the Court does not consider a TLRO or

23 arbitration award violation on par with a Cabazon gaming compact claim.

24      Unite Here does not allege that Pala Band is violating any specific IGRA or

25 Gaming Compact provision;[5] whether the Pala Band is somehow in breach of Adler's

26

27      [5]That is, Unite Here does not argue that the Pala Band is violating the IGRA or shirking

28 its responsibilities under the Gaming Compact. The Court finds that the TLRO is incorporated by reference in the Gaming Compact only in the most technical sense, and for the above reasons Cabazon's principles cannot be applied to shoehorn a petition to confirm a

07cv2312W

1   arbitration award is an issue that can be resolved by the common law of contracts. See
2   Peabody Coal, 373 F.3d at 951–52. Whereas Cabazon's obligation between the state
3   and the tribe originated in the gaming compact, Cabazon, 124 F.3d at 1056, the only
4   obligation *specifically* at issue here originates much further downstream in Adler's
5   arbitration award. Like Peabody Coal, despite the presence of overarching federal
6   regulation, neither the TLRO nor the arbitration award required federal approval.
7   See also Littell v. Nakai, 244 F.2d 486 (9th Cir. 1965) (holding that "there is no federal
8   question where the main dispute is centered on a contract and its construction, rather
9   than the validity of the federal approval of the contract.").

10       Additionally, Unite Here's reliance on Cabazon makes more sense in the context
11  of State-Tribal gaming compact disputes, where a federal court is necessary to provide
12  a neutral forum that otherwise might not exist.[6] See Cabazon, 124 F.3d at 1056
13  (finding that IGRA necessarily conferred federal jurisdiction to enforce Gaming
14  Compacts so states could not avoid promises by asserting sovereign immunity). Where,
15  as here, a private party brings suit, neither litigant is significantly disadvantaged by
16  proceeding in a state or tribal forum.

17       In conclusion, despite Unite Here's insistence to the contrary, this action is *not*
18  a Cabazon claim to enforce a specific provision in a Gaming Compact: rather, the
19  parties and dispute are even further removed from the IGRA and Unite Here never
20  points to a substantial question of federal law on which this suit turns. If anything, the
21  core issue is non-federal—it involves Casino employee labor rights, bargained for by the
22  state of California, and guaranteed by a tribal labor ordinance. The only contracts at
23  issue in Unite Here's claim are the TLRO and arbitration award, which are not

24

25

---

26  TLRO arbitration award into federal court.

27       [6]Indeed, Unite Here's arguments about the necessity of a neutral federal court spill over
    into its discussion of whether a private right of action exists to enforce the gaming compact.
28  (*Pet.'s Opp'n* 10–11.) Many of these arguments are premised in the context of a State-Tribal
    dispute, not a private party-tribal dispute.

1 | specialized types of contracts subject to extensive federal regulation.[7]  See Peabody
2 | Coal, 373 F.3d 945 (using identical reasoning in dismissing case for lack of subject
3 | matter jurisdiction).   Because federal courts must "jealously protect our limited
4 | resources by ensuring that we adjudicate only those matters that we are authorized to
5 | hear by Congress and the Constitution," Cabazon, 124 F.3d at 1065 (Wiggins, J.,
6 | dissenting), the Court **GRANTS** Respondent Pala Band's motion to dismiss for lack of
7 | subject matter jurisdiction and **DISMISSES WITHOUT PREJUDICE** Petitioner
8 | Unite Here's Petition.[8]  (Doc. Nos. 4, 5.)
9 |
10 |        **B.    Even If the Court Had Subject Matter Jurisdiction, Plaintiff Has Not**
11 |               **Exhausted Tribal Remedies or Shown That There is No Tribal Court**
12 |        Respondent Pala Band argues that even if federal subject matter jurisdiction is
13 | somehow proper, and Unite Here enjoyed a private right of action to enforce the
14 | Gaming Compact, federal jurisdiction is still improper because Unite Here did not first
15 | exhaust Tribal Court remedies. (Resp.'s Mot. 13.)  Respondent alleges that it contacted
16 | the Intertribal Court of Southern California ("ICSC") and confirmed that the tribunal
17 | is functioning and would entertain jurisdiction over this action.  (Id. 3–5.)  Finally,
18 | Respondent alleges that it informed Unite Here about the existence and jurisdiction of
19 | the ICSC and provided the labor union with documentation about practicing before the
20 | tribunal.  (Id.)
21 |

22 |        [7]Although Unite Here correctly argues that Indian gaming is subject to extensive federal
23 | regulation, there is no evidence that Congress was especially concerned about regulating the
       rights of Casino workers and the freedom to unionize on tribal lands.  Rather, the contested
24 | labor rights and arbitration processes are enshrined in the TLRO, which was a condition on
       the state of California's agreement to the Gaming Compact.  Thus, the federal interest at stake
25 | in this lawsuit is minimal. See Merrell-Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804,
       814 n.12 (1986) (recognizing some truth to observation that § 1331 decisions can best be
26 | understood as an evaluation of the nature of the federal interest at stake), cited by Cabazon,
       124 F.3d at 1056.

27 |        [8]Because the Court finds that it does not have subject matter jurisdiction over this type
       of dispute, it does not reach the question of whether Unite Here enjoys a private right of action
28 | to enforce the Gaming Compact or whether the Pala Band has waived its sovereign immunity.

07cv2312W

1    Petitioner Unite Here contends, in response, that Unite Here's counsel made a
2  single phone call to the ICSC and was given conflicting information regarding the
3  practice, procedure, and jurisdiction of the court. (*Pet.'s Opp'n* 15–17.)  Based on this
4  call, Petitioner argues that the ICSC is "non-functioning," obviating the requirement
5  to exhaust tribal remedies.

6    When federal and tribal courts have concurrent jurisdiction over a claim,
7  "considerations of comity direct that tribal remedies be exhausted before the question
8  is addressed by the District Court." Johnson v. Gila River Indian Community, 174 F.3d
9  1032, 1035 (9th Cir. 1999).  However, exhaustion is not required where it would be
10  futile to file a claim because the tribal court is not functioning. Id. at 1035–36.  In
11  Johnson, the court found that a tribal appellate court was non-functioning where a
12  plaintiff had corresponded with an appellate tribunal for four months and not received
13  any meaningful reply or briefing schedule. See id. ("[T]he lack of a briefing schedule,
14  scheduled appellate argument, a meaningful response to the notice of appeal, or any
15  answer to any of [plaintiff's] correspondence for an abnormally extensive period of time
16  create doubt that a functioning appellate court exists.").

17    In this case, it is unclear whether the ICSC is a functioning tribal court, ready to
18  entertain Unite Here's petition to confirm an arbitration award against the Pala Band.
19  But what is certain is that the Pala Band has produced information regarding the
20  policies and procedures of the ICSC, has produced the ICSC's code of civil procedure
21  and rules of court, and has produced documentation suggesting that the Pala Band has
22  approved and currently considers itself a member ICSC tribe. (*Notice of Lodgement of*
23  *Exhibits*, Exs. 2–6.)  Additionally, Pala Band's counsel declares that he spoke with an
24  ICSC Court Administrator, Temet Aguilar, who confirmed that the ICSC could and
25  would hear this case.  Finally, Pala Band has shared all this information with opposing
26  counsel. (*Id.*, Exs. 8–14.)

27    Unite Here responds with an allegation that Unite Here's counsel made one
28  phone call, to an unidentified person, who essentially told her that the ICSC could not

1  do all the things that Pala Band insists the ICSC can do. (*Martin Decl.* ¶¶ 3–6.) Based

2  on that single call, and despite Pala Band sharing copies of all relevant documents,

3  Unite Here concludes that it can proceed directly to federal court because the ICSC is

4  non-functioning.

5      Given Unite Here's competent (if ultimately unsuccessful) argument for federal

6  subject matter jurisdiction, it is surprising that Unite Here's efforts to invoke the TLRO

7  tribal remedy would be derailed by a single phone call. Although the information before

8  the Court does not allow a determination of whether the ICSC is functioning or not,

9  it is clear that Unite Here must take further action in order to even make their

10  argument. Unlike <u>Johnson</u>, Unite Here has not attempted correspondence with the

11  ICSC (besides the initial call) and has not attempted to file a case or otherwise invoke

12  the ICSC's jurisdiction. As ICSC information and addresses are readily available on the

13  Internet and through opposing counsel, the Court finds that Unite Here must do

14  something more than making one phone call to credibly argue that they can proceed

15  straight to federal court because the ICSC is non-functioning. Because in any event the

16  Court determines that it lacks subject matter jurisdiction over the matter, the Court

17  denies Unite Here's request for a Rule 56(f) continuance and **GRANTS** Respondent

18  Pala Band's motion to dismiss for failure to exhaust tribal remedies and **DISMISSES**

19  **WITHOUT PREJUDICE** Petitioner Unite Here's petition to confirm an arbitration

20  award. (Doc. Nos. 4, 5.)

21

22  IV.   CONCLUSION

23      For the above reasons, the Court finds that it does not have federal subject

24  matter jurisdiction over a labor union's petition to confirm an arbitration award entered

25  pursuant to a labor ordinance enacted by an Indian tribe, where the labor ordinance

26  was enacted under a gaming compact between the State of California and the tribe.

27  Even if the Court did have federal subject matter jurisdiction, the labor union has not

28  demonstrated that it exhausted tribal remedies before filing suit in this federal forum.

07cv2312W

1  Accordingly, the Court **GRANTS** Respondent's motion and **DISMISSES WITHOUT**

2  **PREJUDICE** Petitioner's petition to confirm an arbitration award.

3

4     **IT IS SO ORDERED.**

5

6  Dated: May 22, 2008

       _____
7                                 Hon. THOMAS J. WHELAN
                                  United States District Court
8                                 Southern District of California

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv2312W