FILED
08 MAY 22 PM 3: 53
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: ___ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE International Union,<br><br>                           Petitioner,<br>vs.<br><br>PALA BAND OF MISSION INDIANS,<br><br>                           Respondent. | CASE NO. 07-CV-2312 W (AJB)<br><br>ORDER GRANTING RESPONDENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (Doc. No. 4) |

On December 11, 2007 Petitioner Unite Here ("Petitioner" or "Unite Here") filed this petition to confirm an arbitration award against Respondent Pala Band of Mission Indians ("Respondent" or "Pala Band"). (Doc. No. 1.) On April 4, 2008 Respondent moved to dismiss the petition for lack of subject matter jurisdiction. (Doc. No. 4.) The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Respondent's motion and **DISMISSES** Petitioner's petition. (Doc. No. 4.)

///
///
///
///
///
///

I.  BACKGROUND

  A.  The Parties

Petitioner Unite Here is an international labor union with an office in San Diego County. (*Pet.* ¶ 4.) Respondent Pala Band of Mission Indians is an Indian tribe whose reservation is located in San Diego County. (*Id.* ¶ 5.) The Pala Band owns and operates a casino known as the Pala Casino Spa and Resort ("Casino"), which is also located in San Diego County. (*Id.*) Many Casino workers belong to the Unite Here labor union.

  B.  A Brief Legal Backdrop of Indian Gaming, The Pala Band, and Labor Dispute Resolution

In 1988, Congress enacted the Indian Gaming Regulatory Act ("IGRA"). 25 U.S.C. §§ 2701 *et. seq.* The IGRA provides a statutory basis for the operation of tribal gaming as a means of promoting tribal economic development, self-sufficiency, and strong tribal government. 25 U.S.C. §§ 2701(1), (2). The Act is an example of "cooperative federalism," in that it seeks to balance the competing sovereign interests of the federal government, state governments, and Indian tribes by giving each a role in the regulatory scheme. Artichoke Joe's v. Norton, 216 F. Supp. 2d 1084, 1092 (E.D.Cal. 2002).

IGRA created three tribal gaming classes, each subject to a different level of regulation. In re Indian Gaming Related Cases, 331 F.3d 1094, 1096–97 (9th Cir. 2003). Class III gaming, or the type of high-stakes gaming usually associated with Nevada-style gambling, is subject to a greater degree of federal and state regulation than either class I or class II gaming (e.g. bingo, etc.). Id. at 1097. Under the IGRA, in order for a tribe (like the Pala Band) to conduct class III gaming, the gaming must be conducted in conformance with a Tribal-State Gaming Compact entered into by the Indian tribe and the State and approved by the Secretary of the Interior. 25 U.S.C. § 2710(d).

In 1999, the Pala Band, wanting to conduct class III gaming on tribal land, entered into a Tribal-State Gaming Compact (the "Gaming Compact") with the state of California, which was ultimately approved by the Secretary of the Interior. (*Pet.* ¶ 6, 8.) The State, however, agreed to the Compact on the condition that the Pala Band tolerate some measure of labor relations for Casino employees. (*Pet.* Ex. A, § 10.7 [hereinafter "*Gaming Compact*"].) Specifically, Section 10.7 of the Gaming Compact required the Pala Band to:

> [P]rovide[] an agreement or other procedure acceptable to the [state of California] for addressing organizational and representational rights of Class III Gaming Employees and other employees associated with the Tribe's Class III gaming enterprise, such as food and beverage, housekeeping, cleaning, bell and door services, and laundry employees at the [Casino], the only significant purpose of which is facilitate patronage at the [Casino].

(*Gaming Compact,* § 10.7.)

On September 22, 1999, in order to satisfy Gaming Compact Section 10.7, the Pala Band adopted the Model Tribal Labor Relations Ordinance ("TLRO"). (*Pet.* ¶ 7.) Among other things, the TLRO defined unfair labor practices, guaranteed eligible Casino employees the right to collectively bargain, and outlined a three-level binding dispute resolution procedure, which included arbitration. (See generally *Pet.* Ex. A at 10–18 [hereinafter "*TLRO*"].)[1]

Under the TLRO, when a labor dispute arises the aggrieved party must first present his grievance to a designated tribal forum. (*TLRO* § 13(b).) The second level of dispute resolution involves the Tribal Labor Panel, comprised of ten arbitrators mutually appointed by the parties. (*TLRO* § 13(c).) Depending on whether a party

---

[1] The TLRO adopted by the Pala Band appears to be a straightforward ordinance modeled after labor ordinances enacted by many other gaming tribes. Courts have found that these ordinances are validly enacted to satisfy Gaming Compacts, and find that "[t]he TLRO provides only modest organizing rights to tribal gaming employees and contains several provisions protective of tribal sovereignty." See In re: Indian Gaming Related Cases, 331 F.3d 1094, 1116–1117 (9th Cir. 2003) (discussing and approving of near-identical TLRO under near-identical Gaming Compact).

objects, either one or three arbitrators hear the grievance and render a binding, written decision.  (TLRO § 13(c).)

Under the third level of binding dispute resolution:

> [E]ither party may seek a motion to compel arbitration or a motion to confirm an arbitration award in Tribal Court, which may be appealed to federal court.  If the Tribal Court does not render its decision within 90 days, or in the event there is no Tribal Court, the matter may proceed directly to federal court.  In the event the federal court declines jurisdiction, the [Pala Band] agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming an arbitration award issued pursuant to the [TLRO[ in the appropriate state superior court.

(TLRO § 13(d).)

### C.   The Parties' Dispute and the Arbitration Award

In February and March 2006, the Pala Band received reports that Hilario Cubias ("Cubias"), a Casino employee and Unite Here union member, was interfering with other employees' work by trying to get them more involved with labor union activities. (*Pet.* Ex. D. at 23 [hereinafter "*Arbitration Opinion*"].)  A Casino supervisor told Cubias that he could not discuss union issues on work time, though other types of non-work-related speech were tolerated.  (*Id.* at 25.)  Unite Here objected to the double standard.

On March 16, 2007 Unite Here and Pala Band invoked the TLRO's second level of dispute resolution and held a hearing before Arbitrator Sara Adler ("Adler").  (*Pet.* ¶ 12.)  On August 30, 2007 Adler issued a binding decision ("Decision"), finding that the Pala Band committed an unfair labor practice by violating a TLRO clause protecting the right to unionise.[2]  (*Arbitration Opinion* 27.)  Adler's Decision also held that "[the Pala Band] is ordered to cease and desist from enforcing any rule regarding

---

[2] Section 4 of the TLRO states that:
Eligible Employees shall have the right to self-organization, to form, to join, or assist employee organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall have the right to refrain from any or all such activities.

speech about [Unite Here] different from one enforced about any other non-work-related speech." (*Arbitration Opinion* 27.)

In June 2007, Unite Here and Pala Band arbitrated an unrelated dispute concerning recently-suspended Casino employee Catalino Morales ("Morales"). (*Pet.* ¶ 16.) On September 20, 2007 Arbitrator Franklin Silver issued an award favorable to Unite Here that ordered Morales be returned to work with full back pay. (*Id.*)

On October 18, 2007, the day Morales was scheduled to return to work, Casino employees distributed leaflets celebrating Unite Here's victory and Morales' impending return. (*Pet.* ¶ 17; Ex. E.) The leaflets also invited Casino workers to consult with Unite Here if they felt pressured or unfairly disciplined at work. (*Id.*) The same day, Casino employees planned to distribute slices of cake containing similar messages. (*Pet.* ¶ 18.)

Unfortunately, Pala Band agents allegedly stopped and prohibited Casino employees from distributing the leaflets and cake because they contained pro-union messages. (*Id.* ¶¶ 17, 18.) Because the Pala Band does not prohibit Casino employees from distributing leaflets or cake that do not contain pro-union messages, Unite Here believes that the events of October 18, 2008 violated Adler's August 30, 2007 arbitration Decision. (*Id.* ¶ 19.)

On December 11, 2007 Petitioner Unite Here invoked the TLRO's third level of binding dispute resolution by filing a petition in this Court to confirm Arbitrator Adler's December 30, 2007 Arbitration Decision against Respondent Pala Band of Mission Indians. (Doc. No. 1.) On April 4, 2008 Pala Band moved to dismiss the Petition for lack of subject matter jurisdiction. (Doc. No. 4.) On May 5, 2008 Unite Here opposed Pala Band's motion. (Doc. No. 8.) On May 12, 2008 Pala Band filed its Reply brief. (Doc. No. 9.)

///
///
///

## II. LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter[.]" Fed. R. Civ. P. 12(b)(1). Although the defendant is the moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. Therefore, the plaintiff bears the burden of proof on the necessary jurisdictional facts. McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (citing Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)); see also Marriot Intern., Inc. v. Mitsui Trust & Banking Co., Ltd., 13 F. Supp. 2d 1059, 1061 (9th. Cir. 1998).

Jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1); see also Snell v. Cleveland, 316 F.3d 822, 826 (9th Cir. 2002). In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. See Thornhill, 594 F.2d at 733. In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

///
///
///
///
///
///

III. DISCUSSION

  A. <u>The Court Lacks Subject Matter Jurisdiction Because Confirming the Arbitration Award Does Not Require Resolution of a Substantial Question of Federal Law</u>

  Respondent argues that subject matter jurisdiction does not exist because confirming the arbitration award does not require resolving a substantial question of federal law. (*Resp.'s Mot.* 6–9.) Even if the IGRA provided some sort of jurisdictional basis, Respondent contends, no private right of action exists allowing Unite Here to bring suit, and in any event the Pala Band has not waived its sovereign immunity from suit in this forum. (*Id.* 9–13.)

  Petitioner, in response, frames its petition as an action to enforce a breach of the Gaming Compact, and argues that jurisdiction exists under <u>Cabazon Band of Mission Indians v. Wilson</u>, 124 F.3d 1050 (9th Cir. 1997). (*Pet.'s Opp'n* 6–8.) Petitioner contends that a private right of action must exist to enforce the Gaming Compact, otherwise the <u>Cabazon</u> plaintiffs would not have had a cause of action. (*Id.* 9–11.)

    *i.* *Under* Cabazon, *Federal Question Jurisdiction Exists For Signatories To Enforce Tribal-State Gaming Compacts*

  The Petition anchors federal jurisdiction on 28 U.S.C. § 1331 and <u>Cabazon</u>, 124 F.3d at 1056. (*Pet.* ¶ 2.) Section 1331 grants district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For a case to "arise under" federal law, a plaintiff's complaint must establish "either that federal law creates the cause of action or that Plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." <u>Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.</u>, 463 U.S. 1, 27–28 (1983). The fact that a defendant is a tribal sovereign is not, by itself, sufficient to raise a federal question. <u>Gila River Indian Cmty. v. Henningson, Durham & Richardson</u>, 626 F.2d 708, 714 (9th Cir. 1980).

Federal question jurisdiction exists for signatories to enforce Gaming Compacts under the IGRA. Cabazon, 124 F.3d at 1050. In Cabazon, plaintiff Indian tribes compacted with defendant State of California to offer off-track horse race wagering on tribal land. Id. at 1053. When the parties signed the gaming compacts, it was unsettled whether federal law required California to pay over to the tribes license fees collected from racing associations for bets made on tribal land. Id. Per the compact's terms, the State and tribe agreed to submit to a federal district court whether the fees were permissible under the IGRA. Id.

The compact itself contained a contingency, depending on what the district court held. Id. at 1054. If the license fees were permissible, California would retain and collect all fees, including those collected on tribal land. Id. If, however, the fees were impermissible, the tribe was entitled to all fees previously collected as well as future credits. Id.

Ultimately, the Ninth Circuit found the fees impermissible because the IGRA preempted California from taxing off-track betting on tribal land. Id. (citing Cabazon Band of Mission Indians v. Wilson, 37 F.3d 430, 435 (9th Cir. 1994) ("Cabazon II")). Despite the ruling, California refused to pay over the fees and declared the gaming compacts invalid. Cabazon, 124 F.3d at 1054.

The tribes then sued the State of California to enforce the gaming compact's contingency and collect past and future fees. Id. California moved to dismiss, arguing that the gaming compacts were purely contractual in nature and beyond federal question jurisdiction. Id. at 1055. The Ninth Circuit disagreed. Id. at 1055–56. Cabazon held that although federal courts did not have jurisdiction over "run-of-the-mill" contract claims, the tribes' claim was not based on a contract that stood independent of the gaming compact. Id. Because the contingency agreement was actually contained within the gaming compact, and the gaming compacts were "quite literally" a creation of federal law, federal jurisdiction existed in order for the tribes to enforce the gaming compact's terms. Id. at 1056. The presence of a neutral federal

forum to resolve the dispute was important: "Congress... did not create a mechanism whereby states can make empty promises to Indian tribes during good faith [compact negotiations], knowing that they may repudiate them with immunity whenever it serves their purpose." Cabazon, 124 F.3d at 1056.

### ii. Under Peabody Coal, *Enforcing an Arbitration Award Does Not Raise a Substantial Question of Federal Law*

In cases where a tribal sovereign has not tried to assert authority over a non-tribal party, and where the validity of a federally regulated contract is not at issue, courts have not found a substantial federal question to be present. See Peabody Coal Co. v. Navajo Nation, 373 F.3d 945, 951 (9th Cir. 2004) (collecting cases). In Peabody Coal, plaintiff coal company and defendant Indian tribe litigated against the backdrop of the Indian Mineral Leasing Act ("IMLA"), 25 U.S.C. §§ 396a *et. seq.*, which required the Secretary of the Interior ("Secretary") to approve all mineral leases between commercial companies and Indian tribes. Peabody Coal, 373 F.3d at 946. The original lease between the coal company and tribe authorized the Secretary to readjust royalty rates at specific time intervals. Id. The parties eventually agreed to amend the original lease, and the provision allowing the Secretary to readjust rates was replaced by an arbitration clause as the "sole and exclusive method" for adjusting royalties. Id. at 947.³ The Secretary of the Interior approved the amended lease. Id.

Some years later, the coal company and the tribe reached an impasse in negotiating royalty rates and convened an arbitration panel. Id. Although the parties eventually negotiated a settlement, the settlement's terms were memorialized in a "final

---

³Like the instant case, the tribe in Peabody Coal also agreed to waive its sovereign immunity from actions to enforce or appeal any resulting arbitration decision, and consented to suit in the United States District Court for the District of Arizona for the limited purpose of enforcing or appealing the arbitration decision. Peabody Coal, 373 F.3d at 947. Of course, merely because the litigants consent to suit in federal court does not provide an independent basis of federal subject matter jurisdiction. See, e.g., Morongo Band of Indians v. California State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988) ("The parties have no power to confer jurisdiction on the district court by agreement or consent.")

arbitration award." Id. In addition, the parties again amended the mineral lease in conjunction with the award, which was duly approved by the Secretary. Peabody Coal, 373 F.3d at 947.

For various reasons, disagreements arose and the coal company filed suit in federal court seeking to enforce the final arbitration award. Id. at 949. Although the coal company did not seek to enforce the underlying leases or amendments, the company premised federal jurisdiction on the Secretary's prior lease approval and the "general federal regulatory scheme governing mineral leases." Id.

The Peabody Coal court found it lacked federal subject matter jurisdiction to enforce the parties' arbitration agreement because the coal company's complaint did not allege that the tribe was currently in breach of any lease provision or amendment. Id. at 950. Despite the presence of a federally-approved lease, the coal company sought to enforce an arbitration award that was *not* federally approved. See id. (noting that the parties agreed that no action of the Secretary was necessary to effectuate the arbitration award). The court found that the only contract at issue was the arbitration award, which was not a specialized type of contract subject to extensive federal regulation. Id. at 951.[4] Rather:

> Whether the [tribe] is somehow in breach of this award is an issue that can be resolved by the common law of contracts. Federal approval of the underlying leases or amendments has no material bearing on whether this award requires confirmation or enforcement. Therefore, [the coal company's] complaint does not present a federal question.

Id. at 951–52.

///

///

///

---

[4]Additionally, the Peabody Coal court did not decide the question of whether the existence of a federal question in an arbitrated dispute would confer federal subject matter jurisdiction to confirm or enforce the resulting arbitration award pursuant to 9 U.S.C. § 9. See Peabody Coal, 373 F.3d at 952 n.5. That issue is not implicated in this case because Unite Here's arbitration award is premised on violations of the TLRO, and not on federal law.

> iii. *Like* Peabody Coal, *Confirming the Arbitration Award Does Not Present a Federal Question*

As a threshold issue, Unite Here is not bringing a cause of action created by the IGRA or other federal law. See Gen. Atomic Co. v. United Nuclear Corp., 655 F.2d 968, 969 (9th Cir. 1981) (holding that 9 U.S.C. § 9 does not create federal question jurisdiction in an action to confirm an arbitration award). Rather, Unite Here—a private party—merely wants to enforce an arbitration award in federal court: there is no State-Tribal dispute concerning any provision of the IGRA or the Gaming Compact. Thus, this case is less like Cabazon's compact dispute and more like Peabody Coal's arbitration enforcement. And although Peabody Coal distanced itself from gaming compact case law, Unite Here has not argued *why* Peabody Coal's four-square principles should not apply. See Peabody Coal, 373 F.3d at 950 n. 3 (finding persuasive authority involving gaming compact irrelevant because it did not involve validity of a coal lease).

Unite Here is undoubtedly correct when it argues that the gaming compacts are a product of federal law, and that the TLRO was a valid subject of Compact negotiations. (*Pet.'s Opp'n* 4–6.) Unlike the Cabazon dispute, however, private enforcement of a TLRO arbitration award is farther removed from applying federal law to a State-Tribal dispute involving an explicit IGRA provision or Gaming Compact contingency. Because neither the IGRA nor Cabazon expressly confer federal jurisdiction for this type of action, the Court is mindful of "[becoming] the arbiter of any and all disputes that may arise out of [gaming compacts]." Cabazon, 124 F.3d at 1064 (Wiggins, J., dissenting). In short, the Court does not consider a TLRO or arbitration award violation on par with a Cabazon gaming compact claim.

Unite Here does not allege that Pala Band is violating any specific IGRA or Gaming Compact provision;[5] whether the Pala Band is somehow in breach of Adler's

---

[5]That is, Unite Here does not argue that the Pala Band is violating the IGRA or shirking its responsibilities under the Gaming Compact. The Court finds that the TLRO is incorporated by reference in the Gaming Compact only in the most technical sense, and for the above reasons Cabazon's principles cannot be applied to shoehorn a petition to confirm a

arbitration award is an issue that can be resolved by the common law of contracts. See Peabody Coal, 373 F.3d at 951–52. Whereas Cabazon's obligation between the state and the tribe originated in the gaming compact, Cabazon, 124 F.3d at 1056, the only obligation *specifically* at issue here originates much further downstream in Adler's arbitration award. Like Peabody Coal, despite the presence of overarching federal regulation, neither the TLRO nor the arbitration award required federal approval. See also Littell v. Nakai, 244 F.2d 486 (9th Cir. 1965) (holding that "there is no federal question where the main dispute is centered on a contract and its construction, rather than the validity of the federal approval of the contract.").

Additionally, Unite Here's reliance on Cabazon makes more sense in the context of State-Tribal gaming compact disputes, where a federal court is necessary to provide a neutral forum that otherwise might not exist.[6] See Cabazon, 124 F.3d at 1056 (finding that IGRA necessarily conferred federal jurisdiction to enforce Gaming Compacts so states could not avoid promises by asserting sovereign immunity). Where, as here, a private party brings suit, neither litigant is significantly disadvantaged by proceeding in a state or tribal forum.

In conclusion, despite Unite Here's insistence to the contrary, this action is *not* a Cabazon claim to enforce a specific provision in a Gaming Compact: rather, the parties and dispute are even further removed from the IGRA and Unite Here never points to a substantial question of federal law on which this suit turns. If anything, the core issue is non-federal—it involves Casino employee labor rights, bargained for by the state of California, and guaranteed by a tribal labor ordinance. The only contracts at issue in Unite Here's claim are the TLRO and arbitration award, which are not

---

TLRO arbitration award into federal court.

[6]Indeed, Unite Here's arguments about the necessity of a neutral federal court spill over into its discussion of whether a private right of action exists to enforce the gaming compact. (Pet.'s Opp'n 10–11.) Many of these arguments are premised in the context of a State-Tribal dispute, not a private party-tribal dispute.

specialized types of contracts subject to extensive federal regulation.[7] See <u>Peabody Coal</u>, 373 F.3d 945 (using identical reasoning in dismissing case for lack of subject matter jurisdiction). Because federal courts must "jealously protect our limited resources by ensuring that we adjudicate only those matters that we are authorized to hear by Congress and the Constitution," <u>Cabazon</u>, 124 F.3d at 1065 (Wiggins, J., dissenting), the Court **GRANTS** Respondent Pala Band's motion to dismiss for lack of subject matter jurisdiction and **DISMISSES WITHOUT PREJUDICE** Petitioner Unite Here's Petition.[8] (Doc. Nos. 4, 5.)

### B. Even If the Court Had Subject Matter Jurisdiction, Plaintiff Has Not Exhausted Tribal Remedies or Shown That There is No Tribal Court

Respondent Pala Band argues that even if federal subject matter jurisdiction is somehow proper, and Unite Here enjoyed a private right of action to enforce the Gaming Compact, federal jurisdiction is still improper because Unite Here did not first exhaust Tribal Court remedies. (*Resp.'s Mot.* 13.) Respondent alleges that it contacted the Intertribal Court of Southern California ("ICSC") and confirmed that the tribunal is functioning and would entertain jurisdiction over this action. (*Id.* 3–5.) Finally, Respondent alleges that it informed Unite Here about the existence and jurisdiction of the ICSC and provided the labor union with documentation about practicing before the tribunal. (*Id.*)

---

[7]Although Unite Here correctly argues that Indian gaming is subject to extensive federal regulation, there is no evidence that Congress was especially concerned about regulating the rights of Casino workers and the freedom to unionize on tribal lands. Rather, the contested labor rights and arbitration processes are enshrined in the TLRO, which was a condition on the state of California's agreement to the Gaming Compact. Thus, the federal interest at stake in this lawsuit is minimal. See <u>Merrell-Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804, 814 n.12 (1986) (recognizing some truth to observation that § 1331 decisions can best be understood as an evaluation of the nature of the federal interest at stake), <u>cited by</u> <u>Cabazon</u>, 124 F.3d at 1056.

[8]Because the Court finds that it does not have subject matter jurisdiction over this type of dispute, it does not reach the question of whether Unite Here enjoys a private right of action to enforce the Gaming Compact or whether the Pala Band has waived its sovereign immunity.

Petitioner Unite Here contends, in response, that Unite Here's counsel made a single phone call to the ICSC and was given conflicting information regarding the practice, procedure, and jurisdiction of the court. (*Pet.'s Opp'n* 15–17.) Based on this call, Petitioner argues that the ICSC is "non-functioning," obviating the requirement to exhaust tribal remedies.

When federal and tribal courts have concurrent jurisdiction over a claim, "considerations of comity direct that tribal remedies be exhausted before the question is addressed by the District Court." Johnson v. Gila River Indian Community, 174 F.3d 1032, 1035 (9th Cir. 1999). However, exhaustion is not required where it would be futile to file a claim because the tribal court is not functioning. Id. at 1035–36. In Johnson, the court found that a tribal appellate court was non-functioning where a plaintiff had corresponded with an appellate tribunal for four months and not received any meaningful reply or briefing schedule. See id. ("[T]he lack of a briefing schedule, scheduled appellate argument, a meaningful response to the notice of appeal, or any answer to any of [plaintiff's] correspondence for an abnormally extensive period of time create doubt that a functioning appellate court exists.").

In this case, it is unclear whether the ICSC is a functioning tribal court, ready to entertain Unite Here's petition to confirm an arbitration award against the Pala Band. But what is certain is that the Pala Band has produced information regarding the policies and procedures of the ICSC, has produced the ICSC's code of civil procedure and rules of court, and has produced documentation suggesting that the Pala Band has approved and currently considers itself a member ICSC tribe. (*Notice of Lodgement of Exhibits*, Exs. 2–6.) Additionally, Pala Band's counsel declares that he spoke with an ICSC Court Administrator, Temet Aguilar, who confirmed that the ICSC could and would hear this case. Finally, Pala Band has shared all this information with opposing counsel. (*Id.*, Exs. 8–14.)

Unite Here responds with an allegation that Unite Here's counsel made one phone call, to an unidentified person, who essentially told her that the ICSC could not

do all the things that Pala Band insists the ICSC can do. (*Martin Decl.* ¶¶ 3–6.) Based on that single call, and despite Pala Band sharing copies of all relevant documents, Unite Here concludes that it can proceed directly to federal court because the ICSC is non-functioning.

Given Unite Here's competent (if ultimately unsuccessful) argument for federal subject matter jurisdiction, it is surprising that Unite Here's efforts to invoke the TLRO tribal remedy would be derailed by a single phone call. Although the information before the Court does not allow a determination of whether the ICSC is functioning or not, it is clear that Unite Here must take further action in order to even make their argument. Unlike <u>Johnson</u>, Unite Here has not attempted correspondence with the ICSC (besides the initial call) and has not attempted to file a case or otherwise invoke the ICSC's jurisdiction. As ICSC information and addresses are readily available on the Internet and through opposing counsel, the Court finds that Unite Here must do something more than making one phone call to credibly argue that they can proceed straight to federal court because the ICSC is non-functioning. Because in any event the Court determines that it lacks subject matter jurisdiction over the matter, the Court denies Unite Here's request for a Rule 56(f) continuance and **GRANTS** Respondent Pala Band's motion to dismiss for failure to exhaust tribal remedies and **DISMISSES WITHOUT PREJUDICE** Petitioner Unite Here's petition to confirm an arbitration award. (Doc. Nos. 4, 5.)

## IV.   CONCLUSION

For the above reasons, the Court finds that it does not have federal subject matter jurisdiction over a labor union's petition to confirm an arbitration award entered pursuant to a labor ordinance enacted by an Indian tribe, where the labor ordinance was enacted under a gaming compact between the State of California and the tribe. Even if the Court did have federal subject matter jurisdiction, the labor union has not demonstrated that it exhausted tribal remedies before filing suit in this federal forum.

Accordingly, the Court **GRANTS** Respondent's motion and **DISMISSES WITHOUT PREJUDICE** Petitioner's petition to confirm an arbitration award.

IT IS SO ORDERED.

Dated: May 22, 2008

Hon. THOMAS J. WHELAN
United States District Court
Southern District of California